# Wytheville

## J. MERRITT CHANDLER V. PAULINE SATCHELL RUSSELL.

June 13, 1935.

Present, Holt, Hudgins, Gregory, Browning and Chinn, JJ.

The opinion states the case.

*Stewart K. Powell* and *James E. Heath,* for the plaintiff in error.

*Mapp & Mapp* and *Herbert Barnes,* for the defendant in error.

CHINN, J., delivered the opinion of the court.

This case is sequel to the case of *J. Merritt Chandler* v. *Pauline Satchell* (now *Pauline Satchell Russell*), reported in 160 Va. 160, 168 S. E. 744.

As there appears, the object of the suit is to recover damages in the sum of $1,500, the amount paid by the plaintiff to the defendant, J. Merritt Chandler, for three certain bonds of the Larchmont Investment Corporation, which the plaintiff alleges she was induced to purchase by reason of false representations of the defendant, and which proved to be worthless.

At the first trial of the case the plaintiff recovered a judgment for the full amount sued for, which judgment was reversed and a new trial awarded for error on the part of the trial court in refusing to give an instruction asked for by the defendant, and in refusing to admit certain evidence offered by the defendant as to the value of the land upon which the bonds were secured. The second trial resulted in a verdict and judgment in plaintiff's favor for a like

amount, with interest thereon from February 15, 1929, and that judgment is now before us for review.

With the exception hereinafter noted the evidence adduced was substantially the same at both trials, and as the material facts in the case are stated in the former opinion, they will not be repeated here except insofar as may be necessary for the consideration of the several errors assigned in the petition.

As appears from the previous opinion, the bonds in question were part of an issue of $110,000, dated August 15, 1927, payable August 15, 1929, and secured by a deed of trust of even date on certain unimproved lots situated in an outlying subdivision of the city of Norfolk owned by the Larchmont Investment Corporation. The total issue of bonds being in default of both principal and interest, ninety-four of said lots were sold at public auction, under the deed of trust, on July 15, 1930, at which sale they were knocked out to Mr. G. Walter Mapp and Mr. J. Harry Rew, representing certain bondholders, for the sum of $500. The remaining twenty-five lots of the 119 covered by the deed of trust were not sold because of defective titles.

It is conceded by the plaintiff in error that the evidence is sufficient to justify a verdict against the defendant, but it is argued that the evidence shows that the bonds purchased by the plaintiff have some value and the verdict, therefore, is for an excessive amount. This constitutes the first assignment of error. In support of this contention plaintiff relies upon the evidence of C. F. Mears and Milton Epstein, witnesses for the plaintiff, who testified that in their opinion the lots sold by the trustee under the deed of trust were worth on September 30, 1927, the day plaintiff purchased the bonds, $20,050; on August 15, 1929, when plaintiff's bonds fell due, said lots were worth $16,500; and said lots were worth on July 15, 1930, when the same were sold under the deed of trust to Messrs. Mapp and Rew, $15,775. It appears, however, from the testimony of these witnesses that these figures constitute estimates of the gross values of the lots on the several dates mentioned, and

that in their opinion it would have required a considerable period of time and effort to have sold the lots in question at these figures, on which sales there would have been a commission of ten per centum. It further appears that taxes on all these lots had been in arrears since the year 1923, and that there were several prior deeds of trust recorded against the property. It further appears that the foreclosure sale of July 15, 1930, was duly and regularly advertised, and the only bid made at said sale was the sum of $500 offered by G. Walter Mapp and J. Harry Rew; that neither the plaintiff nor any of the other bondholders have been able to recover anything from the property on account of their bonds since they became in default, notwithstanding the efforts of the bondholders and those representing them to recover something therefrom.

In view of these circumstances we think the jury was justified in finding that the bonds purchased by the plaintiff were for practical purposes entirely worthless at the time their verdict was rendered. To say the least, it clearly appears that the value of these bonds was too uncertain, if they had any value at all, to justify the jury in deducting any specific sum from the loss which the plaintiff showed she sustained. There is no evidence to show that after the payment of the taxes in arrears and prior liens against the property, the holders of the $110,000 bond issue had any equity whatever in the property from which anything could be realized, which was the real question before the jury. In the last analysis the question was one for the jury under the circumstances, and we, therefore, think that the court below was right in refusing to set aside the verdict on the ground relied on by plaintiff in error.

It is next alleged that the court erred in permitting the witnesses Mears and Epstein to testify that in April, 1931, they had, at the request of plaintiff's counsel, made an inspection of the lots in question and estimated their gross value as of August, 1927, July, 1930, and April, 1931, as hereinbefore stated. It is argued that neither of these witnesses were qualified to express an opinion as to the value

of the lots in August, 1927, when the bonds were issued by the Larchmont Investment Corporation. It appears from the evidence that both of these witnesses were experienced real estate dealers, doing business in the city of Norfolk; that they had been in the real estate business for a number of years prior to 1927; that they were well acquainted with the property in question and real estate values in that section both prior and subsequent to the year 1927; that they were frequently called upon to appraise real estate in and around Norfolk, and made several close, personal examinations of the lots in question, appraising each one separately. In the former opinion in this case it was held that evidence offered to show the true value of the land, which constituted the security for the bonds at the time plaintiff purchased them, should have been admitted. The trial court accordingly admitted evidence on both sides tending to show the value of the land at the time specified. Under these circumstances, we think the evidence given by the witnesses Mears and Epstein was properly admitted to be weighed by the jury along with the other evidence in the case relating to the subject.

The third assignment of error is as to the action of the court in refusing to permit the defendant to introduce in evidence a photograph of the Larchmont section in which the lots in question are located. It appears from the record that Mr. Bellamy, the witness through whom the defendant sought to introduce the photograph, first testified that it was taken in 1920, seven years prior to the sale of the bonds in question, and after the court had excluded the photograph because of the length of time which had elapsed since it was taken, the witness then said that the photograph was taken in the year 1925 or 1926. It also appears that the photograph was taken from an aeroplane and, therefore, failed to show that some of the lots in question were low and marshy and irregular in shape, as disclosed by the evidence. The court excluded the photograph for the reason that it did not portray a true picture of the conditions existing at the time the bonds were sold to the plaintiff,

as it was taken prior to the sale of the bonds, and from the air. While perhaps it might have been allowed to go before the jury for what it was worth if properly explained, we do not think that the act of the court in refusing to admit the photograph, if error at all, can be considered as prejudicial.

In 10 R. C. L., page 1157, this is said on the subject:

*"Time of Making Photograph.*—When the situation and surrounding circumstances are subject to change, photographs, to be admissible as evidence, must have been taken at the time of the transaction or before the situation and circumstances have undergone a change. Frequently photographs have been held inadmissible on the ground that they were taken at too remote a time and when conditions had changed."

█ █ It is next claimed that the court erred in not permitting Mr. Rew, who was jointly interested with the defendant Chandler in handling the 1927 issue of Larchmont bonds, to testify that the bankers in Norfolk had accepted at face value prior issues of Larchmont bonds put out in 1923 and 1925, secured on the same property, without any examination of title. The purpose of this testimony was to justify Chandler's failure to have the title to the property examined before selling the bonds in question to the plaintiff, which is charged by the plaintiff to have been negligence on the part of Chandler. We do not think there is any merit in this assignment. The fact that the bankers of Norfolk may have accepted earlier issues of bonds without having the title to the property examined could not excuse Chandler for his neglect to do so, whether the bankers were negligent or not. It does not appear under what circumstances or for what reason the bankers did not consider it necessary to have the titles examined, but in any case, the situation might have undergone a change at the time the bond issue of 1927 was made. Moreover, it is well settled that when the defendant represents that as true which is not true, and the plaintiff relies thereon to his damage, the defendant is liable for the false representation

whether it was knowingly or innocently made. It is, therefore, manifest that even though Chandler believed the titles to the lots were good, he is none the less liable for so representing them, if in fact the titles were defective.

It appears from the record that after all the evidence had been introduced and the case had been argued before the jury, the defendant requested the court to instruct the jury to the effect, that notwithstanding the plaintiff had testified that, prior to September 30, 1927, she had never heard of the Larchmont bonds, yet, if the jury believed from the evidence that the bonds had been sold and held in and near Parksley for many years prior thereto, that the public generally knew of them, and that they were looked upon as a desirable investment, the jury was at liberty to consider these facts as bearing upon the accuracy of plaintiff's testimony; and that the jury were the exclusive judges of the credibility of each and every witness who had testified in the case.

The court refused to give said instruction, and thereupon the defendant requested it to give the same to the jury in amended form, as follows:

"The court instructs the jury that the circumstance that certain facts were generally known in the community can be considered by them as evidence tending to show that everyone in the community was aware of those facts. And the court further instructs you that you are the exclusive judges of the credibility of each and every witness who has testified before you."

The court refused also to give this instruction, and to these rulings of the court defendant excepted. In support of its contention on this point defendant's counsel quote from 22 C. J., page 285, as follows:

"As bearing on whether a particular person had knowledge of a certain fact it is competent to show general notoriety, general knowledge, or reputation in the community of which such person is a member, provided such notoriety or reputation is establishd to such an extent as to

raise a reasonable inference that the fact was known to the person in question."

We find no error on the part of the court in refusing the above instructions as offered, either in the original or amended form. The only evidence bearing on the subject is a statement made by Mr. Chandler to the effect that the Larchmont bonds "were the most popular bonds around Parksley. You could not supply the demand. You just couldn't get enough bonds for them, they just wanted them." We do not think this evidence is sufficient to show that the "public generally" knew of the Larchmont bonds, or that they were so well known as to raise a reasonable inference that the plaintiff knew of them. The evidence at most could only go to the credibility of the plaintiff's testimony in stating that she had never heard of the Larchmont bonds before Chandler sold them to her, and it would be an unreasonable application of the rule above stated to apply it under the circumstances. The evidence was admitted before the jury and the jury no doubt considered it, but we do not think that it was of sufficient importance to be singled out in an instruction to the jury as impeaching plaintiff's testimony.

It was testified by Mr. Rew that the bid made by Mr. Mapp and himself for the Larchmont lots when they were sold under the deed of trust was only intended as a nominal bid in order to buy the property in for the benefit of the bondholders, and was not regarded by Mr. Mapp and himself as reflecting the true value of the property. Upon the basis of that testimony the defendant asked the court to give the jury the following instruction:

"The court instructs the jury that the sale under the date of August 15, 1927, should not be considered by the jury as having any evidential value whatever as to the value of this property in 1927, or in 1931."

The court refused to give this instruction of which the defendant complains in his sixth assignment of error. As previously stated, the trial court permitted both the plaintiff and defendant to show by any proper evidence either

could produce, the value of the lots in question in 1927 when the plaintiff bought her bonds, the value in 1929 when said bonds fell due, and the value in 1930 when said lots were actually sold, and also the value at the time of the trial. While it is true that under the circumstances the price bid by Messrs. Mapp and Rew cannot be accepted as a true criterion of the value of the lots, and might be considered of little evidential value under the circumstances, we do not think the court should have instructed the jury that the said sale should not be considered "as having any evidential value *whatever* as to the value of this property in 1927 or in 1931." The jury were fully informed of the circumstances under which the sale took place, and also knew of the condition of the lots, the taxes delinquent thereon for many years, and the prior liens against the property. It also appears that the auction sale was held at the Norfolk Real Estate Exchange, after due advertisement, and was in all respects free and open. In view of these facts we think it manifest that the jury had a right to consider the price paid at the sale under the deed of trust in connection with the other evidence on the subject, in determining whether the lots were worth more than the amount they sold for and, if so, how much more.

The following quotation in plaintiff's brief from 10 R. C. L., page 955, seems pertinent:

"*Value of Property Generally.*—The price for which an article is bought and sold constitutes its market value, and is ordinarily the best and most satisfactory standard by which to estimate the amount at which the same or similar articles are to be appraised in the assessment of damages. The competency of such evidence cannot be made to depend on the form or mode, or particular terms of the contract of sale. These circumstances may have an essential bearing on the weight to be given to the fact of sale as affecting the price and as indicating the true value of the property, and they are proper for the consideration of the jury. But they cannot operate to exclude the evidence altogether. And so

the price obtained at auction is competent evidence on the question of the value of the property."

The seventh and last assignment of error concerns a statement made by the counsel for plaintiff to the jury in the argument of the case to the effect that Mr. Bellamy had made one-half million dollars out of Larchmont property. This was objected to by the defendant on the ground that there was no evidence in the case upon which to base it. The court overruled the objection and counsel for the plaintiff thereupon stated that he did not wish to make an improper argument, and told the jury to disregard the remark. It appears, however, from the record, as demonstrated by counsel for plaintiff in their brief, that according to Mr. Bellamy's testimony, his companies had realized from the sale of lots and a bond issue $625,000 in excess of the cost of the properties in question, and there was, therefore, evidence upon which the statement made by counsel for the defendant to the jury was based.

After careful consideration of each and all of the errors assigned in the petition, we find nothing in the record, so far prejudicial to the defendant as to justify a new trial. The trial seems to have been fairly conducted, the jury fairly instructed, and the evidence sufficient to sustain the verdict. The judgment is, therefore, affirmed.

*Affirmed.*