# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

## UNION TRUST CORPORATION V. T. H. FUGATE.

January 9, 1939.

Record No. 2012.

Present, Campbell, C. J., and Hudgins, Gregory, Eggleston and Spratley, JJ.

84

The opinion states the case.

*Love B. Rouse* and *Thomas C. Phillips,* for the plaintiff in error.

*E. Hagan Richmond* and *Hagan Bond,* for the defendant in error.

SPRATLEY, J., delivered the opinion of the court.

This proceeding is based upon a charge of fraud and deceit. It involves a transaction whereby certain notes for the payment of money were alleged to have been sold upon false and untrue representations that they were secured by a deed of trust constituting a first lien upon real estate.

The jury found a verdict for the plaintiff, T. H. Fugate. The trial court sustained the verdict. The defendant asks us to set aside the judgment as contrary to the law and the evidence, and for alleged errors of law committed during the trial.

The parties will be referred to hereinafter as plaintiff and defendant, the respective positions they occupied in the trial court.

So far as the question of the weight and sufficiency of the evidence to support the judgment is concerned, we need, in view of the verdict of the jury, consider only so much thereof as is favorable to the plaintiff. If that is credible and sufficient to sustain the verdict, it cannot be discredited merely because of contradictions. It was within the peculiar province of the jury to determine whom they believed.

Viewed in this light, the record discloses that the jury might have found therefrom the following facts:

The Union Trust Corporation, whose name was formerly Union Trust Bank, is a commercial banking institution located at Bristol, Tennessee.

In October, 1923, this Bank made a loan to J. B: Bowlin, the father-in-law of T. H. Fugate. The debt was evidenced by two notes for $500 each made by Bowlin and his wife, payable to bearer one year after date. They were secured

by a deed of trust of even date therewith from Bowlin and his wife to D. T. McKee, trustee, conveying 267 acres of land in Scott county, Virginia, upon which the grantors resided. Union Trust Bank promptly forwarded the deed of trust to the clerk's office of Scott county, with the request that it be recorded and returned to it, stating that it would pay the recording fee when the bill was received. The clerk did not receive the recording fee, and did not record the deed of trust.

The Bank demanded payment at maturity, but the makers of the notes were unable to pay them. Bowlin having become involved in financial difficulties, told his son-in-law, T. H. Fugate, that he owed this $1,000, secured by a first deed of trust on his land and home, and suggested to Fugate that if he could arrange to purchase or pay the notes, his money would be safe.

Fugate, a man with little education and small business experience, then went to the Bank, and asked Mr. J. H. Faucette, its president, if the notes were safe, and particularly if the deed of trust was recorded. Mr. Faucette stated to him that the notes were perfectly safe, and that the deed of trust was duly of record in Scott county. Fugate then arranged with the president of the Bank to purchase the notes and then, or soon thereafter, began making payments on the debt. These payments were made from time to time, and a number of them were made to S. T. Bowman, then assistant cashier of the Bank. The payments were made out of funds belonging to Fugate, and which he said he secured from work as a laborer, from his farming operations, and from a loan to him from a friend.

Fugate testified that he did not purchase the notes for his father-in-law, nor was any of his father-in-law's money used in the purchase. J. B. Bowlin corroborated him in this, and states that he furnished none of the money for the purchase, but that Fugate used his own money.

Fugate completed payment of the full amount of the notes, principal and interest, in December, 1926. The Bank stamped the notes "Paid," and delivered them to Fugate

with a letter to H. P. Nickels at Gate City, the location of the clerk's office of Scott county, authorizing him to release the deed of trust, and saying that Fugate would pay the release fee of fifty cents. Fugate says that this letter was written because he had advised Mr. Faucette that he contemplated making a deal with Bowlin, whereby he might purchase some of the latter's land, and, in that event, wanted the lien released. However, the letter was never delivered to Mr. Nickels, nor the notes presented for a release of the deed of trust. Fugate, believing that he had purchased the notes and was the legal holder thereof, and relying upon the Bank president's statement that the notes were safe and secured by a deed of trust, duly of record, did not go to the clerk's office to have the deed of trust released, but carried the notes with him and kept them securely for two or three years.

Fugate afterwards spoke to a lawyer, a kinsman by marriage, who told him the notes had not been properly assigned. He carried them back to the Bank, and discussed the matter with Mr. S. T. Bowman, who had become the cashier of the Bank. He explained to Mr. Bowman that he had purchased and paid for these notes, and desired to hold them as regularly assigned to him. Mr. Bowman then made the following endorsement, undated, upon each of the notes: "This note was paid to us by T. H. Fugate and bought from us by him, and although paid so far as we are concerned, they should not have been marked paid as Mr. Fugate holds them for value.

"Union Trust Bank

"By—S. T. Bowman, Cashier."

In the meantime, J. B. Bowlin and wife had executed two other deeds of trust on their real estate, one of them covering the 267 acres embraced in the deed of trust to McKee.

On November 29, 1928, subsequent to the other deeds of trust, Bowlin and his wife executed another deed of trust to J. W. Bowlin, trustee, to secure the payment of $1,050, to T. H. Fugate. This latter deed of trust was on 44 acres

of land, a separate tract from that in the deed of trust to McKee, but covered the same debt. This was a prior deed of trust against these 44 acres of land. Fugate did not then examine the records to ascertain whether the deed of trust to McKee had been recorded, but claimed he secured the execution of the deed of trust to J. W. Bowlin, trustee, in order to protect himself, because he was disturbed over the method of the assignment of the notes to him.

Subsequently, J. B. Bowlin, having become seriously involved financially, and being unable to pay his debts, foreclosure proceedings were instituted against him.

Fugate, in arranging to present his claim for a first lien under the deed of trust to McKee, heard that this deed of trust had not, in fact, been recorded. This was about the year, 1936, and he went again to the Bank, where its officers again assured him that the deed of trust was recorded. He then arranged for one of the Bank's officers to accompany him to the clerk's office at Gate City, and there they found the deed of trust had never been put to record, nor the recording fee paid. There was a notation on its back showing the amount of the recording fee, and the words "Statement sent.—Another sent."

The real estate of Bowlin was sold under foreclosure proceedings, and did not realize a sum sufficient to pay the creditors secured under the recorded deeds of trust, leaving nothing for Fugate's claim.

As opposed to the claim of the plaintiff, the defendant relies upon the stamping of the notes as paid; the action of Fugate in having another deed of trust executed to secure his debt; the long lapse of time in discovering the failure of the recordation of the McKee deed of trust; its suspicion that Fugate was concealing the truth as to his knowledge of the situation and as to the source of the money paid; that Fugate and Bowlin were in collusion to extort the money from the Bank; that the evidence of the alleged fraud was not clear and convincing; and that the trial judge expressed his doubt as to the right of recovery.

■ Where there were questions of fact, or conflicts in the evidence, the jury resolved each question against the defendant.

The instructions as to the law were just as favorable to the defendant as could have been properly given. They covered every phase of its several contentions.

■■ It is true that fraud is not to be presumed, and that it must be proved by evidence that is clear, cogent, and convincing. The court instructed the jury in this exact language. There was clear and cogent evidence of constructive fraud, and that it was convincing to the jury is shown by their verdict.

The Bank contends, notwithstanding the endorsement placed thereon by its cashier, that when the notes were marked "Paid," and delivered to the plaintiff, they were thereby cancelled and discharged.

■■ We have held, and the authorities have generally held, that in a transaction like the one under scrutiny, the question whether there has been a payment or a purchase, is a question of intention,—a question of fact rather than of law. Ordinarily, it is to be considered as a purchase, in the absence of anything to show a contrary intention. Here Fugate testified that his intention was to make a purchase, and the jury accepted his version. *Cussen* v. *Brandt & Dunlop, et als.,* 97 Va. 1, 32 S. E. 791, 75 Am. St. Rep. 762; 8 Am. Jur. 478.

"Whether payment by a third person operates as a discharge of the instrument, or as a purchase vesting title in the payor, depends on the payor's intention. * * * But *prima facie* when a stranger acquires a negotiable instrument for value from the holder, he is deemed a purchaser rather than a payor. The question, then, is one of intention, to be determined by the circumstances of each case." Bigelow on Bills, Notes, and Checks, Lile's Edition, page 465.

The defendant filed a plea of the statute of limitations. Fugate testified that he did not discover the alleged fraud or mistake until within one year of the institution of this action. He was uneducated, a small country farmer, an

unskilled laborer, and he made a detailed explanation of his failure to discover that the McKee deed of trust was not recorded. He claims to have relied implicitly upon the statements of the officers of the Bank.

The right to recover money paid under fraud is deemed to accrue at the time such fraud is discovered, or by the exercise of due diligence ought to have been discovered. Virginia Code 1936, section 5811.

At the request of the plaintiff, the following instruction was properly given:

"The Court further instructs the jury that upon an action at law upon a misrepresentation of a material fact, mistake or fraud, the statute of limitations does not begin to run until such misrepresentation, mistake, or fraud is discovered, or by the exercise of due diligence should have been discovered, and the action may be brought within five years from that time."

Under this instruction, the jury found for the plaintiff, and there is evidence to support the finding.

Mr. J. H. Faucette, the president of the Bank, died several years prior to the institution of this suit. The Bank contends that the testimony of Fugate as to the representations alleged to have been made to him by Faucette, should not have been admitted because of lack of corroboration, relying upon Virginia Code 1936, section 6209. It admits in its brief that possibly the statute is not so worded as to be clearly applicable to the case.

The late Judge Burks discussed the foregoing section of the statute in *Robertson's Executor* v. *Atlantic Coast Realty Co.*, 129 Va. 494, 106 S. E. 521, in an opinion which has since been frequently cited. It is stated in the first syllabus to that case: "The purpose of the section was to remove disqualifications, not to create them in any case, nor to impose burdens on witnesses already competent."

This statute does not provide that if an officer of a corporation, which is a party to an action, is dead, and such officer made the contract for the corporation with the opposite party to the litigation, the testimony of such opposite

party cannot be received unless corroborated. The statute does not create a disqualification when a corporation is a party, nor impose additional burdens upon an opposite party, because of the inability of an officer of a corporation to testify.

In the case before us, the action is not against the officer, but against the corporation.

As the learned judge of the trial court stated in his written opinion, courts cannot extend the provisions of a statute beyond what its language justifies. That rule applies here.

There is no merit in the contention that a new trial ought to have been granted on the ground of after-discovered evidence. The affidavits upon which the motion is based do not furnish the necessary requirements.

The right to recover in this case is based upon constructive fraud rather than actual fraud. It is conceded that there was no intentional misrepresentation. The question of intention is immaterial if the representation was false and resulted in damage to one who relied on it as being true.

In a long line of cases, we have consistently held that when one represents as true that which is not true, and another relies thereon to his damage, the latter may recover for the false representation whether it was knowingly or innocently made. *Chandler* v. *Russell*, 164 Va. 318, 180 S. E. 313; *Mears* v. *Accomac Banking Co.*, 160 Va. 311, 168 S. E. 740; *Chandler* v. *Satchell*, 160 Va. 160, 168 S. E. 744; *Trust Company* v. *Fletcher*, 152 Va. 868, 148 S. E. 785, 73 A. L. R. 1111; *Moore* v. *Gregory*, 146 Va. 504, 131 S. E. 692; *Schmelz Brothers* v. *Quinn*, 134 Va. 78, 113 S. E. 845; *Lowe* v. *Trundle*, 78 Va. 65; *Grim* v. *Byrd*, 32 Gratt. (73 Va.) 293, 300.

In *Mears* v. *Accomac Banking Company, supra,* the bank sold certain bonds to one of its customers on the representation that they were as good as gold, and the bank stood fully behind them. Mears purchased the bonds upon that representation, and it subsequently developed that the property

which secured the bonds was of little or no value, and the bonds practically worthless.

Mr. Justice Chinn, there speaking for the court, said (page 743):

"The law is well settled that if one represents as true what is really false, in such a way as to induce a reasonable man to believe it, and the representation is meant to be acted on, and he to whom the representation is made, believing it to be true, acts on it, and in consequence thereof sustains damage, there is such fraud as will support an action for deceit at law or a bill for rescission of the transaction, in equity. Whether the representation is made innocently or knowingly, if acted on, the effect is the same. In the one case the fraud is constructive; in the other it is actual."

While the evidence of the plaintiff is not as satisfactory as it might be, we are unable to say that it is incredible or impossible. The verdict is not contrary to the evidence, or without evidence to support it. There is nothing in the record to satisfy us that it is a "plain deviation from right and justice."

The trial judge, who saw and heard the witnesses, took the same view, although he stated that if he had been on the jury he might have favored a different verdict. He recognized, however, that the jury were the sole judges of the weight of the evidence and the credibility of the witnesses, and that since there was credible evidence to support their verdict, it could not be disturbed. *Cardwell* v. *N. & W. Ry. Co.*, 114 Va. 500, 77 S. E. 612; *Morien* v. *N. & A. Terminal Co.*, 102 Va. 622, 46 S. E. 907; *Blair & Hoge* v. *Wilson*, 28 Gratt. (69 Va.) 165; Burks' Pleading and Practice (3d Ed.) 543.

Mr. Justice Epes aptly stated this rule in *Thress* v. *Hackler*, 155 Va. 389, 154 S. E. 502, 506, as follows:

"In passing upon a motion to set aside a verdict because the evidence is insufficient to sustain the verdict, the guiding principle for the court is not what it may think the jury ought to have done, or what the court may think it would have done had it been sitting as a jury in the case, but

whether as reasonable men the jury could have found such a verdict upon the evidence. If this question can be answered in the affirmative the verdict of the jury should be sustained."

If the rule were otherwise, and a court were vested with the authority to set aside the verdict of a jury merely because it would have favored a different verdict as a member of the jury, there would be no need for juries. The opinion of the court would be wholly controlling and sufficient.

Certainly, if Fugate purchased the notes upon the representations alleged, relied upon those representations, and did not discover their falsity by the exercise of proper prudence within the five-year period before he brought suit, he is entitled to recover. His damage is as great as if the representations were knowingly and fraudulently made. The officers and agents of the Bank were guilty of two mistakes—a failure to see that the deed of trust relied upon was recorded, and the making of an untrue statement that it was recorded. If a loss was occasioned thereby, the Bank, instead of the plaintiff, should suffer the loss.

For the foregoing reasons, we are of opinion to affirm the judgment of the trial court.

*Affirmed.*