# Richmond

## W. S. McDaniel v. E. A. Hodges.

November 25, 1940.

Record No. 2264.

Present, Campbell, C. J., and Holt, Gregory, Eggleston
and Spratley, JJ.

The opinion states the case.

*Burnett Miller, Sr.,* for the appellant.

*A. Plunket Beirne,* for the appellee.

SPRATLEY, J., delivered the opinion of the court.

This proceeding was instituted by E. A. Hodges against W. S. McDaniel for the recission of a contract of sale of real estate, alleged to have been entered into in reliance upon false and fraudulent material representations of an agent of McDaniel. The defendant, McDaniel, demurred to the bill of complaint and filed an answer denying its allegations. The demurrer was overruled. The evidence was heard *ore tenus* before the trial judge. A decree was entered granting the relief prayed for, and the defendant has appealed.

There are few questions of law involved. A proper decision depends upon a determination of the facts. The evidence will, therefore, be set out in some detail, although it will be necessarily stated from the standpoint most favorable to the plaintiff, Hodges, in view of the holding of the learned chancellor, who saw and heard the witnesses testify.

Hodges, a resident of West Virginia, went to the office of B. E. Wheeler, a real estate broker at Charlottesville, Virginia, to consult him about buying a farm. Wheeler told him he had for sale a farm of about thirty-five acres, belonging to W. S. McDaniel, near Barboursville, in Orange county. Wheeler represented the property as "mostly clear land, fairly good house with some repairs, and a good well of water right at the house."

Hodges, Helen Dye, his young housekeeper, and another person, went with Wheeler to inspect the property. After going through the interior of the house, they went to the well at its back. Hodges looked down the well and, not seeing any water, picked up a little rock and dropped it in the well. Not hearing it hit any water, he said to Wheeler, "Is there any water in this well?" Wheeler replied, "All it needs is cleaning out. I have been here and drunk out of it." Helen Dye corroborated this and testified Mr. Wheeler said in addition, "It is a good well of water here."

The well had a platform on it, a well house with a roof over it, and a door on top of the well house. The true

condition of the well was not apparent to ordinary observation.

Wheeler then told Hodges that there was a spring on the property that he could use until he got the well cleaned out. Hodges and several disinterested persons testified that no such spring or other source of water whatever was located on the property.

Hodges testified he would not have bought the property if he had known the true condition of the well; but that he did agree to purchase it, relying wholly on the representations of the agent, Wheeler, that it was a good well and could be cleaned out.

On January 8, 1937, upon receipt of a deed, he paid to McDaniel $400 in cash, and gave six notes of $100 each, secured by a deed of trust on the property, for the remaining portion of the purchase price.

Hodges says that if the representations of Wheeler had been true he was both willing and able to pay the deferred installments. He expended, in labor and materials, $200 in improvements on the farm.

Within a week after moving on the property, water being essential to its full enjoyment, Hodges attempted to get someone to clean the well. This and several subsequent attempts to obtain workmen for that purpose were futile, due to certain and peculiar dangers inherent to that particular well because of the condition and the nature of the surrounding ground.

In June, 1938, Hodges was informed of the actual condition of the well by a former occupant of the premises. The well, originally 60 feet deep, had, some years prior to the sale, caved in to a depth of about 40 feet and had been entirely worthless ever since. Immediately upon learning this, Hodges made a complaint to Wheeler, who promised to see about it. Nothing having been done, he wrote to Wheeler and later went to see him in November, 1938. Again, Wheeler made promises which were not fulfilled. Hodges, in the same month, also wrote to McDaniel; but the latter ignored the complaint in his reply to the letter.

In the meantime, Hodges and his family had been forced to get water from a neighbor's spring 254 steps distant, none other being available.

On March 28, 1939, not having secured relief, he filed his bill in equity asking for the rescission of the contract and a return of the $400 paid thereon.

The evidence discloses that the worthless condition of the well was definitely known to Wheeler prior to the sale to Hodges. He had told a former tenant to keep quiet about the well when prospective purchasers came to the property, or, at least, to tell them that the well was alright and simply needed cleaning out. Another prospective purchaser had told Wheeler that he would not purchase the property "because the bottom has fallen out of the well."

McDaniel knew nothing of the representations made by his agent. Wheeler did not inform him of the complaint of Hodges about the lack of a good well.

Wheeler denied that he had made any false representations, or that he had formerly been refused a real estate broker's license for improper practices.

The general reputation of Wheeler for honesty and veracity was successfully attacked. There was no evidence in rebuttal. In addition, there was offered a certified copy of an order of the Virginia Real Estate Commission, dated May 6, 1932, finding Wheeler guilty of improper practices as a real estate broker and salesman, and refusing to grant him a further license as such broker.

McDaniel relies upon the evidence of Wheeler that he made no false representations and contends that, under the facts, Hodges was charged with knowledge of the condition of the well, since he had ample opportunity to ascertain its condition; that he was guilty of laches in the institution of this proceeding; and that he broke his contract only because he was unable to pay the balance due.

It is unnecessary to go outside of Virginia for authority applicable to the foregoing facts.

█ The following principle stated by Kerr in his work on Fraud and Mistake, in section 2, has been repeatedly affirmed and reaffirmed by this court:

"If one represents as true what is false, in such a way as to induce a reasonable man to believe it, and the representation is meant to be acted upon and he to whom the representation is made, believing it to be true, acts on it, and thereby sustains damage, there is ground to support an action of deceit at law, and to found a rescission of the transaction in equity." *Rorer Iron Co.* v. *Trout et al.,* 83 Va. 397, 2 S. E. 713, 5 Am. St. Rep. 285; *Union Trust Corp.* v. *Fugate,* 172 Va. 82, 200 S. E. 624, and cases cited.

█ In a majority of American jurisdictions, this general principle is qualified by the rule that the intent to deceive is an indispensable element in an action of deceit. In Virginia, however, we have consistently adhered to the minority view that the intent or good faith of a representator is not in issue and is not controlling. *Union Trust Corp.* v. *Fugate, supra;* 23 Am. Jur., Fraud and Deceit, sections 116 and 120.

In *Wilson* v. *Carpenter's Adm'r,* 91 Va. 183, 21 S. E. 243, 50 Am. St. Rep. 824, Judge Harrison said:

"The intent of the party making the representation is wholly immaterial. The point is, has the other party been misled. It is sufficient that the statement is actually untrue, so as to mislead the party to whom it is made. The party making it need not know of its falsity, nor have any intent to deceive; nor does his mere belief in the truth make any difference. A party making a statement as true, for the purpose of influencing the conduct of the other party, is bound to know that it is true."

It is not material in this case whether we apply the majority or the minority rule as to whether the misrepresentations were made with an intent to deceive. The evidence shows that the uselessness of the well was a notorious fact in the community, and that Wheeler had full knowledge of its worthlessness. Both the falsity of the representations and the intent to deceive are apparent.

■ The representations of Wheeler were not the bare expressions of an opinion or mere trade talk. They did not require that Hodges immediately undertake to ascertain their truth or falsity. They were false representations of a material fact made and repeated in such a manner and under such conditions as to entitle the one to whom they were made to rely on them.

■ There is no merit in the defense of laches. Hodges undertook to protect himself when he got assurances of remedy. He acted immediately upon learning the truth. He refused to make further payments on the property until the dispute could be settled. He has made a satisfactory explanation of his reasons for the delay. No injustice has been imposed upon the defendant by the delay, nor has there been any change of condition to his disadvantage. He has failed to sustain the defense of laches. *Virginia Land Co.* v. *Haupt,* 90 Va. 533, 19 S. E. 168, 44 Am. St. Rep. 939.

The delay induced by promises to remedy the situation complained of and reassurances that the former representations were true gave to Hodges the right to wait for a while. Relying upon such promises and assurances was not a waiver of the right to rescind. The circumstances here satisfactorily explain the delay. *C. E. Wright & Co., Inc.* v. *Shackleford,* 152 Va. 635, 148 S. E. 807.

We find no error in the decree of the trial court. There is ample evidence to support all of the allegations of the bill of complaint. Hodges is entitled to the relief which he sought. The decree of the trial court is affirmed.

*Affirmed.*