# Richmond

BRIDGEWATER PLOW CORPORATION V. TURNER ASHBY.

November 17, 1932.

Present, Campbell, C. J., and Holt, Epes, Hudgins, Gregory and Browning, JJ.

The opinion states the case.

*J. M. Perry,* for the plaintiff in error.

*Timberlake & Nelson,* for the defendant in error.

HUDGINS, J., delivered the opinion of the court.

By this writ of error, the defendant is seeking to reverse a judgment obtained against it in an action of assumpsit instituted by the plaintiff.

Several errors are assigned, but, in our opinion, only one merits consideration, *i. e.,* whether there was sufficient evidence to sustain the verdict of the jury.

It appears that the parties made a verbal contract whereby the plaintiff agreed to sell and the defendant to buy certain lumber to be manufactured from standing trees owned by the United States government, the purchase of which the plaintiff was then negotiating and subsequently completed. There was excepted from the sale to the defendant such framing as the plaintiff would need for the erection of a building in Churchville. The plaintiff, for $2.50 per thousand feet, employed Mr. Van Fossen to fell and cut into logs the trees which the forester marked for sale. The defendant employed Foley & Michael to skid the logs, saw them into lumber, and deliver the same on or near the Deerfield road, for which they were to receive $11 per thousand feet, to be paid by the defendant and deducted from payments to become due the plaintiff.

Foley & Michael moved their sawmill on the tract and began to manufacture the timber into lumber. The defendant, at different times, paid Foley & Michael various sums, and began hauling the lumber from "on or near the Deerfield road" to its plant at Bridgewater, and other places. The plaintiff gave the loggers and sawyers the bill for the framing reserved, and received 27,578 feet of lumber, which included several thousand feet of culls, or unmer-

chantable lumber. The defendant accounted for 107,273 feet, and reported to plaintiff that it had hauled from the Deerfield road to its yard at Bridgewater some 30,000 feet of rough oak boards which were then unsold and were held for benefit of plaintiff. In a final settlement with Foley & Michael defendant paid them $11 per thousand for manufacturing and hauling 236,945 feet. Plaintiff accepted the figures of Foley & Michael as correct, and settled with Van Fossen on that basis.

The plaintiff instituted this action to recover the purchase price of 72,098 feet of lumber, which the above figures show is the difference between the quantity accounted for and the quantity manufactured.

The plaintiff contends that the defendant had possession and charge of all operations and under the contract it is responsible for the purchase price of all the lumber manufactured, with the exceptions stated.

The defendant contends that it has accounted for all the lumber it received, and that in employing Foley & Michael and in disposing of the lumber which was not suitable to be used in making handles it was acting as agent for the plaintiff.

The rights of the parties are controlled by the contract of sale. While it was not in writing, L. V. Miller, acting for the defendant, wrote a letter[1] setting out his recollection of the agreement.

---

[1]"BRIDGEWATER, VIRGINIA, *March* 29, 1929.
"MR. TURNER ASHBY,
        *Churchville, Va.*

"DEAR MR. ASHBY:

"Confirming our verbal agreement with you yesterday we outline as follows:
"On the piece of timber you are buying from the government you are to saw out such framing, etc., you will need for your building and we are to buy on grade the other lumber as follows:
"Hickory and gum—$17.50 per thousand feet.
"Hemlock frame twelve feet long and under and hemlock boards any length at $17.50 per thousand feet.
"Hemlock frame over twelve feet long $25.00 per thousand feet.

Plaintiff testified that the letter covers the terms of the agreement except in two particulars, *i. e.,* (1) that the defendant agreed to purchase all the lumber to be cut from the tract except the framing he required for his building, and (2) that the defendant was required to take all railroad ties manufactured. After receipt of the letter the defendant agreed to purchase all the lumber manufactured from the tract except what plaintiff would need for framing and the rough oak boards which the defendant agreed to sell for the benefit of plaintiff. All ties were sold at prices satisfactory to both parties and the rough oak boards are still held by defendant for benefit of plaintiff, so neither of these items is material to the issue involved in this case.

The real difference between the parties seems to be, which of them controlled the sawmill operations and had possession of the lumber. Without reciting the evidence in detail, it is sufficient to say that there was a conflict, and the jury has settled the conflict against the defendant.

The defendant contends that even if it is liable for the shortage of the lumber, the plaintiff cannot recover because he failed to establish the grade of the missing lumber, and that the price, $22.50 per thousand feet, set out in his bill of particulars and allowed by the jury is without evidence to support it.

"White pine, poplar and pitch pine frame lumber twelve feet long and under also all white pine, poplar and pitch pine boards any length $20.00 per thousand feet.

"White pine, poplar and pitch pine frame lumber over twelve feet long $25.00 per thousand feet.

"Oak handle lumber and No. 1 common inch boards from $22.50 per thousand to $27.50 per thousand feet according to grade.

"The rough oak boards or framing and other cull lumber we are not required to take.

"If you cut any ties we can take the No. 1 at seventy-five cents each and the No. 2 at fifty-five cents each. This is not binding.

"All of the prices above named are on or near the Deerfield main road and is to be paid for as taken up.

"We also understand we are to employ and pay for skidding, sawing and putting to the road all lumber. We have engaged Foley & Michael for this purpose at $11.00 per thousand feet. We are to pay them for this work and same is to be charged to your account against the lumber we purchase as outlined.

The plaintiff does not seek recovery for lumber left upon the mill yard or near the Deerfield road. There is evidence to the effect that several thousand feet of culls, or unmerchantable lumber, had been rejected and left at both of these places, but the witnesses testified that the lumber was measured and due deductions made therefor. Neither of the parties questioned the quantity of the lumber manufactured, as reported by Foley & Michael, both of whom testified that 236,945 feet were actually sawed by them and hauled from the mill site to "on or near the Deerfield road," except perhaps 5,000 feet of culls hereinafter mentioned. The letter signed by the defendant stated that "On the piece of timber you are buying from the government you are to saw out such framing, etc., you will need for your building and we are to buy on grade the other lumber as follows; * * *

"All of the prices above named are on or near the Deerfield main road and is to be paid for as taken up. * * *

"Any other parties wanting any of the lumber herein specified as purchased by us are to come to us for same. In other words you are only to furnish bills for what you need for your own building and this is not to be specially selected or the best taken out but just as it comes."

The plaintiff kept no account of either the lumber manufactured or that hauled away by the defendant. In fact,

---

"We are also to furnish bills and look after the cutting of all such lumber we buy. You are to furnish the bill you will require for your building. Any other parties wanting any of the lumber herein specified as purchased by us are to come to us for same. In other words, you are only to furnish bills for what you need for your building and this is not to be specially selected or the best taken out but just as it comes.

"You are to grant free ingress and egress to and from the timber for such purposes as needed and if necessary room on your land near the public road for piling the lumber.

"We trust this is in accordance with our understanding and if so please write us a few words acknowledging this letter and agreeing to its contents.

"Any other matters that may come up we are sure we can agree upon from time to time.

"Yours very truly,

"(Signed)   BRIDGEWATER PLOW CORPORATION
"By L. V. MILLER."

he only went to the scene of operation once or twice. Foley & Michael at first refused to give plaintiff any information as to the amount of lumber manufactured, and it was only after repeated requests made to the defendant that he was able to obtain the total amount of lumber manufactured from the tract of timber. All of the records were kept by, or were available to, the defendant. It is not seriously contended that the plaintiff exercised any control over either the sawing or the lumber after it was moved on the Deerfield road. In addition, the plaintiff has paid, or has been charged with, $13.50 per thousand for all the lumber manufactured, including 72,098 feet missing.

The stacks of rough oak boards on defendant's yard when re-measured were found to contain 35,517 feet, instead of 30,000. Foley & Michael testified that they discarded at the sawmill some five thousand feet of culls. Add this amount of lumber to the 27,578 feet which plaintiff received and the 107,273 feet for which defendant rendered an account, deduct this sum from the total number of feet manufactured and it will show a difference of 61,581 feet, which at $22.50 per thousand is about the sum for which the trial court gave judgment.

The evidence discloses that the lumber when placed on the Deerfield road was branded with defendant's mark and, presumably, was removed therefrom by it. There is a suggestion that some of the lumber might have been stolen, but there is no proof that such was the case. The witnesses for the defendant stated that some of the lumber inspected or graded at points other than the point named in the contract was found to contain much unmerchantable lumber, which was rejected, but no account was kept of the number of feet so rejected, nor was the plaintiff notified of its rejection until after this controversy arose.

The plaintiff was not in a position to prove with any degree of accuracy the grade of the missing lumber. Assuming that it consisted of the same proportion of the different kinds as that for which the account was rendered,

$22.50 per thousand is less than the average agreed price. Foley & Michael, the sawmill men who were selected by and received orders from defendant, had complete charge of the logs from the time of severance until the lumber was piled on or near the Deerfield road. For this work defendant paid them $11.00 per thousand and charged the same to plaintiff. At the Deerfield road the defendant received the lumber and admits that it removed more than it has accounted for, but how much more it is unable to state.

The defendant is clearly liable for some damages, and under the circumstances the plaintiff should not be denied recovery merely because he is unable to prove with precision the grade of the missing lumber. See *Anchor Co.* v. *Adams,* 139 Va. 388, 391, 124 S. E. 438.

We find no reversible error and the judgment is affirmed.

*Affirmed.*