**Donna G. CARLTON, et al., Plaintiffs,**

v.

**Lamar M. JOLLY, et al., Defendants.**

**Civ.A. No. 87–0619–R.**

United States District Court,
E.D. Virginia,
Richmond Division.

May 2, 1989.

Thomas Wolf, Timothy M. Kaine, Mezzullo, McCandlish & Framme, Richmond, Va., for plaintiffs.

James C. Roberts, Gary J. Spahn, Mays & Valentine, Richmond, Va., for plaintiffs' counsel.

Lamar M. Jolly, Williamsburg, Va., pro se.

Walter B. Martin, Jr., Ray W. King, Gordon P. Robertson, Vandeventer, Black, Meredith & Martin, Norfolk, Va., for defendant Franklin.

William B. Poff, Douglas W. Densmore, Woods, Rogers & Hazlegrove, Roanoke, Va., for defendants Irvin and Gecker.

## MEMORANDUM OPINION

RICHARD L. WILLIAMS, District Judge.

This matter is before the Court on the defendants' motions for sanctions pursuant to Rules 11 and 37 of the Federal Rules of Civil Procedure. For the reasons discussed below, those motions are GRANTED in part and DENIED in part.

*Background*

This case arises out of the failure of the Commonwealth Inn Limited Partnership. The Commonwealth Inn is located in Williamsburg, Virginia. In 1985, Lamar M. Jolly and Wayne D. Franklin purchased the Commonwealth Inn, and then syndicated the Inn by selling partnership units to a series of limited partners for $30,000 per unit. Both Jolly and Franklin initially served as general partners; however, soon after the syndication was underway, Franklin recouped his investment, and withdrew as a general partner. The Commonwealth Inn was one of three such partnerships organized by Jolly.

William J. Irvin and Daniel A. Gecker are Virginia attorneys and, at the time of the operative facts, were partners in the law firm of Irvin & Gecker. That firm served as general counsel to the three partnerships and was responsible for the preparation of the private placement memoranda through which the limited partnership units were sold.

The limited partnership units in the Commonwealth Inn were marketed by ManEquity, a registered broker-dealer. Two of ManEquity's registered representatives were particularly active in marketing the units, and themselves bought into the partnership. W. Duke Grkovic, a ManEquity agent in Richmond, Virginia, purchased two-thirds of a unit; Donna Carlton, a ManEquity agent in Minneapolis, Minnesota, purchased one-half of a unit. Later, when the Inn began to experience difficulties in early summer of 1986, Grkovic played a pivotal role in organizing a Limited Partners Committee ("LPC") to investigate the situation.

The LPC initially retained John Graham, of the Richmond law firm of Browder, Russell, Morris and Butcher to represent it in its investigative activities. ManEquity provided $10,000 toward Graham's legal fees. Later, when this suit was filed, the plaintiffs retained Thomas Wolf and Timothy Kaine, of the Richmond firm of Mezzullo, McCandlish and Framme. The plaintiffs in this action are all purchasers of units in the Commonwealth Inn limited partnership.

The Inn was sold at foreclosure in August, 1987, and the complaint in this action was filed on October 2, 1987. It charged Jolly, Franklin, Irvin and Gecker (among others) with violation of the Racketeer Influenced and Corrupt Organizations (RICO) Act, 18 U.S.C. § 1961 et seq. and of federal and state securities laws, as well as common law fraud, negligence, breach of fiduciary duty, conspiracy, breach of contract and negligent misrepresentation. On the eve of trial, Jolly declared bankruptcy, and the claims against him were stayed, 11 U.S.C. § 362(a)(1), and transferred to the Middle District of Florida, Jacksonville Division. 28 U.S.C. § 1412.

On January 25, 1988, the Court granted Jolly's and Franklin's motions to dismiss the RICO count, on the grounds that the plaintiffs had not alleged an "enterprise" through which the two men were operating. At the same time, the Court denied their motions to dismiss the securities fraud and common law fraud counts, and Jolly's motion to dismiss the conspiracy and negligent misrepresentation counts, as well as the motions of Irvin and Gecker to dismiss the RICO and securities fraud counts. On February 9, 1988, the plaintiffs filed an amended complaint. On November 3, 1988, the Court granted Irvin's and Gecker's motions to dismiss the mail fraud allegations in the RICO count, but denied their motion to dismiss the RICO and securities fraud counts in the Amended Complaint. On January 5, 1989, after a protracted discovery contest that started in September of the previous year, the Court ordered the production of a portion of the handwritten notes of Duke Grkovic. Finally, on January 18, 1989, the Court denied summary judgment with respect to the counts charging conspiracy and violation of § 12(2) of the Securities Act of 1933, 15 U.S.C. § 771(2), and acknowledged the plaintiffs' withdrawal of the negligence and breach of contract claims against Irvin and Gecker, and the breach of fiduciary duty claims against all defendants.

The case was tried to a jury on January 19, 20 and 23, 1989. Before submitting the case to the jury, the Court granted directed

verdicts in favor of Gecker on all counts, in favor of Franklin on the counts charging conspiracy, breach of contract and violation of § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and in favor of Irvin on the conspiracy count. The court also limited the § 10(b) claim against Irvin to a single alleged misrepresentation, the only one for which the plaintiffs could allege loss causation. The jury returned a verdict finding that the plaintiffs had known or, by the exercise of reasonable diligence, should have known of the conduct which they alleged violated § 12(2) before October 2, 1986, with the implication that that claim was time barred, and finding for the defendants on the remainder of the counts.

The defendants now move for sanctions under Rule 11 of the Federal Rules of Civil Procedure. Franklin moves for sanctions in the amount of $103,173.92, representing the fees and costs in connection with his defense against the RICO, § 12(2), common law fraud, and conspiracy counts. Irvin moves for sanctions in the amount of $100,000 in connection with his defense against the counts alleging RICO, § 12(2), common law fraud, negligence, breach of fiduciary duty, conspiracy, breach of contract, and negligent misrepresentation. Gecker also moves for sanctions in the amount of $100,000 in connection with his defense against all counts. All three defendants also request sanctions under Rule 37 for the delay in turning over Grkovic's notes, and for the last minute production of the plaintiffs' tax returns and purchaser questionnaires.

### Rule 11

Under Rule 11 of the Federal Rules of Civil Procedure, an attorney's signature on a pleading certifies both that, after reasonable inquiry, the attorney believes that the pleading is grounded in fact and warranted by law and that it is not "interposed for any improper purpose" such as harassment or delay. The standard against which the attorney's belief in his or her pleading is measured is an objective one. If a pleading is found to violate this Rule, sanctions shall be imposed, either on the person signing the pleading, or on a represented party. It is, however, necessary to exercise caution in the imposition of sanctions in order to avoid "stifl[ing] the enthusiasm or chill[ing] the creativity that is the very lifeblood of the law." *Eastway Construction Corp. v. City of New York*, 762 F.2d 243, 254 (2d Cir.1985).

### Non-sanctionable claims

All three defendants move for sanctions on the RICO and conspiracy counts; Irvin and Gecker move for sanctions on the breach of contract count against them, and Gecker moves for sanctions on the § 12(2), § 10(b), and Virginia Securities Act counts. Although not necessarily the product of sound legal judgment, all of these counts were sufficiently well grounded in fact and warranted by law to escape sanction.

### RICO

All three defendants move for sanctions for the RICO count, relying on two prongs of Rule 11. They argue that the RICO claims against them were not grounded in fact and were brought in bad faith or for an improper purpose. The Court dismissed the RICO claim against Franklin by order of January 26, 1988, and granted Gecker's motion for a directed verdict. The jury returned verdicts finding that Irvin was not liable to any of the plaintiffs for RICO violations.

The defendants first argue that the RICO count against them was not well grounded in fact. The predicate acts of the RICO claim were the securities violations alleged to have occurred under §§ 12(2) and 10(b), involving the misrepresentations in the private placement memorandum. If a sufficient factual basis existed for the predicate acts of securities fraud, then the inclusion of the RICO count against the defendants would be grounded in fact. The Court denied a motion for summary judgment on the § 12(2) count, on statute of limitations grounds, and sent it, along with the § 10(b) count against Irvin, to the jury. As mentioned earlier, the Court granted Gecker's motion for a directed verdict with respect to these counts. Evidence was available to the plaintiffs and—to a certain extent, presented at trial—that all three defendants had participated in all

three partnerships: Franklin by putting up the cash necessary to make the initial purchase; Irvin and Gecker by helping to prepare the private placement memoranda. There was also evidence that the memoranda contained material misrepresentations, and that each of the three may have served as sellers of the securities. Although insufficient proof of these allegations was introduced to convince a jury or, in some cases, to escape a directed verdict motion, sufficient evidence was available to allow the Court to find that the securities fraud counts were grounded in fact as against all three defendants.

The plaintiffs also introduced evidence that the defendants were associated with an enterprise engaged in interstate commerce, that they engaged in and received income from a pattern of racketeering activities, and that they participated in the conduct of the enterprise through a pattern of racketeering activity, the necessary elements of the various sections of RICO alleged in the Amended Complaint. These allegations are therefore well grounded in fact. They also pass muster under the second prong of Rule 11. The Court dismissed the RICO count against Franklin on the grounds that the Fourth Circuit's definition of "enterprise" did not include the defendants acting as a collective group. However, in the corresponding memorandum opinion, the Court acknowledged that other circuits have decided this issue differently. The dismissal of this count against Franklin demonstrates that it is not "warranted by existing law;" the contrary decisions in other circuits suggest that it was supported by "a good faith argument for the extension, modification or reversal of existing law." The law concerning a "pattern of racketeering activity" is in an even greater state of flux than that of "enterprise." *See Brandenburg v. Seidel*, 859 F.2d 1179 (4th Cir.1988) (citing cases). Finally, the Fourth Circuit has not ruled definitively, and there is a split among courts that have considered the issue, as to whether the predicate acts need be criminal acts. *Compare Dan River Inc. v. Icahn*, 701 F.2d 278, 291 (4th Cir.1983) (dicta), *with James v. Meinke*, 778 F.2d 200, 204 (5th Cir.1985) (§ 10(b) as predicate act), *and Yancoski v. E.F. Hutton & Co., Inc.*, 581 F.Supp. 88, 94 (E.D.Pa.1983) (§§ 12(2) and 10(b) as predicate acts). The RICO count against all three defendants was, therefore, well grounded in fact and warranted either by existing law or by an argument for the extension, modification or reversal of existing law.

The defendants also argue that the RICO count was "interposed for an improper purpose," in violation of Rule 11. That Rule states that an attorney's signature certifies that a pleading is legally and factually grounded *and* that it is not interposed for an improper purpose, suggesting that failure of either prong would lead to sanctions. At least two circuits have held, however, that a complaint that is grounded in fact and warranted by law cannot be interposed for an improper purpose. *Zaldivar v. City of Los Angeles*, 780 F.2d 823, 832 (9th Cir.1986); *Robinson v. National Cash Register Co.*, 808 F.2d 1119, 1130 n. 20 (5th Cir.1987). The Fourth Circuit has held that a motion to amend a complaint, warranted by law and grounded in fact, that was filed solely for the purpose of determining whether the defendants would oppose it, constituted a violation of Rule 11. *Cohen v. VEPCO*, 788 F.2d 247, 249 (4th Cir.1986). *Cohen* is distinguishable from the present case, however. The motion in *Cohen* was filed only as a sort of procedural game. As soon as the defendants opposed the motion, the plaintiffs withdrew it. In this case, however, well-grounded claims were vigorously pursued for the legitimate purpose of recouping money that the plaintiffs felt they were due.

It is, contrary to the defendants' strenuous arguments, irrelevant that Grkovic proposed to commit insurance fraud, and that Grkovic and Carlton may have orchestrated the entire suit to deflect attention from their roles as sellers of the securities in question. These may properly be the subjects of separate lawsuits, brought by the state or the buyer-plaintiffs as appropriate. They do not serve to make a legally and factually acceptable pleading sanctionable. This result is consonant with the purpose

of Rule 11: to deter frivolous litigation while being careful not to chill vigorous pursuit of rights. *Cohen* properly chills attorneys from using pleadings as procedural games. When a party or attorney has a legally valid claim, and the determination to see it through, he or she should not have to worry about his or her motives, or how they will be perceived.

Conspiracy

■ The defendants move for sanctions on the count alleging conspiracy to commit securities fraud, on the grounds that it was not well grounded in fact. Specifically, they argue that the plaintiffs provided no evidence of intent. In order to prove a conspiracy, the plaintiffs had to show that each of the defendants combined with some other person to accomplish an unlawful purpose. There was evidence that Franklin worked together with Jolly in the initial stages of the Commonwealth Inn syndication, as well as on other syndications. There was also evidence that the result of this teamwork was a misleading private placement memorandum, an unlawful purpose. Irvin and Gecker had served as the attorneys for this and two other syndications, working with Franklin and Jolly and others to put together the allegedly fraudulent memoranda. This evidence was elicited in court in such a spotty and incomplete fashion as to lead to a directed verdict disposing of the count. It was not so sparse as to be sanctionable.

Breach of contract against Irvin and Gecker

■ Count 10 of the Amended Complaint alleged breach of contract against Irvin and Gecker, on the grounds that the two had a contract to provide legal services to the partnership, and that the plaintiffs were third party beneficiaries of that contract. This count was challenged in Irvin and Gecker's motion for partial summary judgment of January 10, 1989. In their response of January 17, 1989, the plaintiffs agreed to withdraw this and two other counts, "having reviewed Irvin and Gecker's memorandum, and having considered the overlapping nature of many of the counts of the Amended Complaint." Irvin and Gecker now move for sanctions on this count.

The Virginia Supreme Court has not yet ruled on whether a person outside of the attorney-client relationship may be a third party beneficiary to a contract between an attorney and a client. Because the law is not yet established in Virginia, it is impossible to say that the claim was unwarranted by existing law or a good faith argument for the extension, modification or reversal of existing law. The breach of contract count against Irvin and Gecker is therefore not sanctionable under Rule 11.

*Section 12(2): statute of limitations*

■ Franklin, Irvin and Gecker all request sanctions for the count alleging violation of § 12(2), on the grounds that the plaintiffs should have known that the statute of limitations had run. The Court denied Irvin's motion to dismiss this count on November 3, 1988, and then denied his motion for summary judgment on the same count on January 18, 1989, both on statute of limitations grounds. In deciding the summary judgment motion, the Court stated that there was a genuine issue of material fact as to when the evidence of securities fraud came to the attention of the limited partners. There was no evidence in the record at that point that Grkovic was aware of the elements of a § 12(2) claim, as such, before October 2, 1986. The defendants did not put on any such direct evidence at trial, and the question went to the jury on the circumstantial evidence of the activities of the LPC during the summer of 1986. The jury found that the plaintiffs knew or, by the exercise of reasonable diligence, should have known of the conduct which they alleged violated section 12(2) before October 2, 1986.

The defendants note that the Court granted summary judgment with respect to the common law fraud and negligent misrepresentation counts on statute of limitations grounds, and argue that the same factors that would cause the statute of limitations for the common law fraud claim to accrue would also cause the statute of limitations on the securities fraud claim to

accrue. However, the Grkovic notes that reveal a knowledge of potential common law fraud (see below) do not contemplate securities fraud. As there was no evidence in the record that Grkovic or any other plaintiff knew, before October 2, 1986, of the conduct which they later alleged constituted securities fraud, the claim was non-frivolous. By asking for sanctions against the plaintiffs for bringing this count, the defendants are in essence asking the Court to go beyond the evidence and speculate on the state of mind of the plaintiffs when they brought this count. In order to sanction the plaintiffs for bringing a frivolous claim, however, Irvin must rely on more than mere speculation and the jury's assessment of ambiguous evidence.

Sections 12(2) and 10(b) and the Virginia Securities Act counts against Gecker

■ Gecker moves for sanctions on the § 12(2), § 10(b), and Virginia Securities Act claims. The Court granted Gecker's motion for a directed verdict on these and all other counts. Gecker argues that these claims against him were not well grounded in fact. It is easy to see why he makes this claim: at trial, the plaintiffs put on almost no evidence concerning Gecker whatsoever. This oversight made the plaintiffs' attorneys' performance far from a model of trial technique and organization, and may seriously dismay their clients. Alone, however, it does not constitute sanctionable conduct.

The standard for the factual prong of Rule 11 is whether, after reasonable inquiry, a reasonable attorney would consider the claim to be grounded in fact. We must look to what the attorneys knew when they filed the Complaint and Amended Complaint, and determine both whether it was the result of reasonable inquiry and whether a reasonable attorney, confronted with those facts, would have brought securities fraud claims against Gecker.

Thomas Wolf, one of the plaintiffs' attorneys, states in an affidavit that he "spent approximately 40 hours talking with various plaintiffs and with John Graham, Esquire, who had been representing the limited partners" before Wolf and his firm took over, and "reviewing hundreds of documents." Wolf Affidavit at 1. It must have been this review that revealed to Wolf "the obvious, i.e., that Mr. Gecker and his partner had drafted and disseminated private placement memoranda making misrepresentations or material omissions in three related ... syndications." Id. at 2. Wolf concedes that he did not dig deeper to discover the precise extent of Gecker's involvement. Id. at 3. His knowledge of "the obvious" was, however, borne out in later discovery depositions when, for example, Gecker himself stated that he "reviewed or supervised" the drafting of private placement memoranda, Gecker Discovery Deposition at 17, and when Irvin stated that "very little that went on in the firm that did not get discussed among myself, Mr. Gecker and [an associate]." Irvin Discovery Deposition at 31. Although it was almost unbelievably sloppy of the plaintiffs' counsel to have failed to put on evidence against Gecker, the counts against him were well grounded in fact, and are therefore not sanctionable.

*Sanctionable counts*

Common law fraud and negligent misrepresentation

■ The Amended Complaint included counts alleging common law fraud and negligent misrepresentation. All three defendants move for sanctions on these two counts on the grounds that they were not well grounded in fact.

The statute of limitations for fraud and negligent misrepresentation is one year. Va.Code § 8.01–248, *Pigott v. Moran,* 231 Va. 76, 341 S.E.2d 179, 182 (1986). Because negligent misrepresentation is a type of constructive fraud, the same statute of limitations applies. *Jefferson Standard Life Ins. Co. v. Hedrick,* 181 Va. 824, 27 S.E.2d 198, 202 (1943). A cause of action under either count accrues "when such fraud ... is discovered or by the exercise of due diligence should have been discovered." Va.Code § 8.01–249.

The question of due diligence is often a close one, and one that should be submitted to the jury in cases of doubt. With respect

to these two fraud claims, however, the Court has, and the plaintiffs had early on, hard evidence that the fraud had been discovered before October 2, 1986, i.e., more than one year before the suit was filed. In addition to the many references to suspected wrongdoing on the part of the defendants, Duke Grkovic's notes from August 22, 1986, contain a specific reference to fraud. The plaintiffs and their attorneys have had access to these notes since prior to the filing of this lawsuit. Reasonable inquiry by the attorneys would have disclosed that the statute of limitations had run, and that the claims of fraud and negligent misrepresentation were not well grounded in fact. The inclusion of these claims in the Complaint and Amended Complaint is sanctionable under Rule 11.

### Negligence and breach of fiduciary duty

■ The Amended Complaint included counts alleging negligence and breach of fiduciary duty against Irvin and Gecker. These counts were withdrawn along with the breach of contract count in response to Irvin and Gecker's motion for partial summary judgment. Irvin and Gecker now move for sanctions on these counts.

The allegations of negligence and breach of fiduciary duty were predicated on the existence of a duty owed by Irvin and Gecker to the limited partners, as a result of the attorney-client relationship between the partnership and the two lawyers. Virginia, however, requires privity between lawyer and client in order to bring a legal malpractice claim. *Ayyildiz v. Kidd*, 220 Va. 1080, 266 S.E.2d 108, 112 (1980). This law is sufficiently well established in Virginia that these two counts are objectively frivolous. It appears to the Court that the plaintiffs' withdrawal of the counts concedes this point. The plaintiffs, instead, ask for the Court's praise for saving the trouble of trying these counts. Sanction, not praise, is due, however, for forcing the defendants to prepare a defense to these claims from October, 1987, to January, 1989.

### Sanctions against Duke Grkovic

Rule 11 allows sanctions to be imposed on either the attorney who signed the pleading in question or a represented party. In their memoranda, the defendants called to the Court's attention conduct on the part of Duke Grkovic that they allege is sanctionable under Rule 11. At the hearing in connection with these motions, the Court heard testimony from William Irvin and Beverly Wellford, as well as Grkovic himself concerning this conduct. After considering the content of such testimony and the credibility of the three witnesses, the Court makes the following finding of fact and conclusions of law.

During the summer of 1986, Irvin and Grkovic spoke in a conference room at the office of Irvin & Gecker. During that conversation, Grkovic expressed to Irvin that he was distressed at the increasingly bleak state of Jolly's and the Commonwealth Inn's financial situation. Grkovic stated that most of his better clients had invested in the Commonwealth Inn, and that he did not want them to lose their investment. He then asked Irvin whether he had malpractice insurance, and if so, what the deductible was on that insurance. When Irvin responded that he had such insurance, and that the deductible was five thousand dollars, Grkovic suggested to him that he make the investors whole by admitting liability and allowing the insurance company to pick up the tab. Irvin replied that he was not interested in participating in insurance fraud.

In June of 1987, Irvin and Grkovic met again in the lobby of the James Center in Richmond. When Irvin mentioned to Grkovic that he was on his way to meet with Beverly Wellford to discuss the Commonwealth Inn partnership, Grkovic stated that the LPC was contemplating a lawsuit against ManEquity. Grkovic went on to say that the lawsuit might include a RICO count, that it might include Irvin as a defendant, and that the advantage to including a RICO claim was that it was likely to force a quick settlement.

Later in the summer of 1987, Grkovic met with Wellford who was then a Vice President at ManEquity. At that meeting, Grkovic stated that the plaintiffs were contemplating a suit against a number of de-

fendants, including ManEquity, and that the suit might include a RICO count. Grkovic expressed to Wellford that, unless ManEquity were willing to reach a private settlement with the plaintiffs, he would go to the local media with the story that ManEquity was being sued for racketeering.

 Grkovic's activities detailed above were clearly *in terrorem*, calculated to extort a settlement, and save Grkovic's relationships with his best clients, at any cost. Extorting a settlement and preserving one's own business relationships are "improper purposes" under Rule 11. Grkovic's purpose in filing the Amended Complaint was improper with respect to all counts, especially the RICO count. As explained above, however, a claim that is grounded in fact and warranted by law cannot be said to have been filed for an improper purpose. Grkovic's improper purpose is, therefore, only sanctionable with respect to those counts that violate the other prongs of Rule 11, namely, those alleging common law fraud and negligent misrepresentation against all the defendants, and breach of contract and breach of fiduciary duty against Irvin and Gecker.

*Rule 37 sanctions*

 The story of Grkovic's antics does not end with his threats and proposals of insurance fraud. Rather, he reached new heights of chicanery in connection with a motion to compel the production of his handwritten notes. That motion was first filed by defendants Irvin and Gecker on September 6, 1988, and was opposed by the plaintiffs on the grounds of attorney-client privilege. As the plaintiffs gave insufficient evidence in support of their assertion of this privilege, on September 26, 1988, the Court ordered the production of the notes. The plaintiffs then filed a motion to modify this order, accompanied by an affidavit, signed by Grkovic, stating that he had "never disclosed the contents of these notes to anyone outside the Court and" the law firm of Mezzullo, McCandlish & Framme, and that "the notes reflect[ed his] conversations with [his] attorneys, ... other limited partners, ... and ... with poten-

tial witnesses." Because no specific evidence had yet been presented concerning the individual notes, on October 28, 1988, the Court denied the plaintiffs' motion to modify its September 26 order.

It was only after the plaintiffs petitioned the Fourth Circuit for a writ of mandamus, and received from that Court the response that a more detailed record was necessary in order to decide on the applicability of the privilege, that they presented such evidence to the Court. In two hearings, held on December 30, 1988 and January 5, 1989, the plaintiffs put on a series of witnesses to testify to the attendees at each of the various conversations memorialized in Grkovic's notes. Grkovic gave testimony concerning all the notes. In particular, he testified that the notes of August 14 and August 22, 1986, recorded conversations between him and the then attorney for the LPC, John Graham. He added that he believed that no one else was present for those conversations. In spite of Grkovic's testimony aimed at establishing the protection of the attorney-client privilege for these notes, the Court determined that strangers to the attorney client relationship had been present, and ordered the notes produced.

The first of those notes, that of August 14, mentioned the amount of Irvin's insurance coverage; the second, August 22, note referred to a "massive suit tie up all assets ... R.E.C.O. Act." Whether, or when, it began to dawn on Grkovic that it was not to his advantage to have had such conversations with his attorney, in view of the allegations of insurance fraud and threatening conduct that had begun to surface against him, this Court need not decide. Grkovic himself has now put before the Court a signed affidavit, of March 20, 1989, stating that these two conversations were in fact with Irvin. In support of this, Grkovic now provides copies of pages from his date book and telephone bill.

Rule 37(a)(4) of the Federal Rules of Civil Procedure allows the Court to impose sanctions on a party whose conduct necessitated a motion to compel. The defendants have moved for sanctions against the plain-

tiffs and their attorneys for both the delay in the production of Grkovic's notes and the last minute production of certain of the plaintiffs' tax returns and purchaser questionnaires. The Court finds that the conduct of plaintiffs' counsel in connection with the production of the tax returns and purchaser questionnaires was reasonable and in good faith, and therefore declines to impose sanctions on them. The Court also finds that the conduct of plaintiffs' counsel in connection with the Grkovic notes was reasonable in light of the information provided them by Grkovic. Plaintiffs' counsel's conduct, therefore, did not necessitate the motion to compel. No sanctions will be imposed on plaintiffs' counsel under Rule 37.

 Grkovic, however, signed an affidavit in October and testified under oath in December that the notes reflected conversations with John Graham or other co-clients only. In March, he signed an affidavit, swearing that two of these conversations had in fact been with William Irvin. This conduct may or may not constitute perjury—the Court does not decide that here. The Court is confident, however, that the phone bill and appointment book that Grkovic produced in support of his March affidavit were available to him in September, when the motion to compel was first filed. It is Grkovic's conduct in failing to produce those records initially that necessitated the motion to compel, as well as the motion for reconsideration, the petition for a writ mandamus, and the series of hearings in connection with each. The Court therefore sanctions Grkovic personally, under Rule 37, for the delay in the production of his notes.

*Amount of sanctions*

When a violation of Rule 11 occurs, the court "shall impose ... an appropriate sanction." The amount of the sanction is at the discretion of the district court. *Fahrenz v. Meadow Farm Partnership*, 850 F.2d 207, 211 (4th Cir.1988); *Cabell v. Petty*, 810 F.2d 463, 466 (4th Cir.1987). This amount is usually based on the attorneys' fees of the moving party, but is not bound by that figure. *Fahrenz, supra; Ordower v. Feldman*, 826 F.2d 1569, 1576 (7th Cir. 1987).

If the four sanctionable claims in this case had been the only claims in the complaint, it is likely that they could have been disposed of quickly on motions to dismiss or for summary judgment. It is likely that bringing such motions would have cost at least twelve thousand five hundred dollars. In this case, the process was complicated by the duplicity of Duke Grkovic, adding to the time necessary for both parties to dispose of the claims. The Court therefore imposes a sanction under Rule 11 of twelve thousand five hundred dollars ($12,500.00) on Thomas Wolf, Timothy Kaine and Duke Grkovic, jointly and severally. Because sanctions are granted in favor of Franklin on only two counts, and in favor of Irvin and Gecker on four counts, this amount is to be divided as follows: two thousand five hundred dollars ($2,500.00) to Franklin; and five thousand dollars ($5,000.00) each to Irvin and Gecker. In addition, a sanction, under Rule 37, of two thousand four hundred ($2,400.00) is hereby imposed on Duke Grkovic for the delay caused by his discovery antics. This latter sanction is to be divided equally among the three defendants.

It is so ORDERED.