Isabella Beiler

v.

Commonwealth of Virginia

Record No. 910955

February 28, 1992

Present: Carrico, C.J., Compton, Stephenson, Whiting, Lacy, and
Hassell, JJ., and Poff, Senior Justice

*S. Clark Daugherty* for appellant.

*Eugene Murphy, Assistant Attorney General (Mary Sue Terry, Attorney General,* on brief), for appellee.

JUSTICE WHITING delivered the opinion of the Court.

The issues in this case turn upon the sufficiency of the evidence and whether the defendant's changes of the numerical amounts of two checks were alterations sufficiently material to constitute the common-law crime of forgery.

At a bench trial, Isabella Beiler was found guilty under Code § 18.2-172 of forging and uttering two checks and sentenced to one year in prison on each of the four counts. The sentences, imposed to run consecutively, were suspended, and Beiler was placed on probation for four years and ordered to make restitution.

Beiler appealed to the Court of Appeals. That Court refused her petition for appeal, and she appeals to this Court.

Consistent with well-settled appellate principles, we state the evidence and the reasonable inferences that can be drawn therefrom in the light most favorable to the Commonwealth, the prevailing party in the trial court. *Oden* v. *Salch*, 237 Va. 525, 527, 379 S.E.2d 346, 348 (1989); *Virginia & Md. R.R.* v. *White*, 228 Va. 140, 142, 319 S.E.2d 755, 756 (1984).

In 1989, Beiler, an independent contractor, acted as a courier for Fabian Baron, a newspaper publisher. On Friday, September 1, 1989, Baron gave Beiler a check for $197 that he had written to pay her for courier services rendered during that week. When Beiler cashed the check at a drive-through window of a branch of

the First American Bank of Virginia (First American), the numeral one read seven, but the written amount of the check remained as "One hundred ninety seven dollars and 00/100 dollars."

The drive-through teller testified that when the check was cashed, she delivered a sealed envelope to Beiler containing $797 and Beiler's driver's license. Beiler denied that she changed the numerical amount of the check, and she testified that she received only $197.

Two weeks later, on Friday, September 15, 1989, Baron again paid Beiler for her week's work. This time the check, as issued, bore the written amount of "One hundred forty three dollars and 50/100 dollars," and its amount in figures was $143.50. However, when another teller at the same branch of First American cashed the check for Beiler a short time later, the numeral one again read seven. Once again, Beiler received an additional $600 on this check even though its written amount remained as "One hundred forty three dollars and 50/100 dollars."

The second teller noticed her mistake approximately 30 minutes after cashing the check, and Baron was contacted to notify Beiler of the mistake. Although Baron was unsuccessful in reaching Beiler that weekend, Beiler testified that her 15-year-old daughter told her late Friday afternoon that Baron had called and advised of the teller's error.

Upon Beiler's arrival at work on Monday morning, Mr. and Mrs. Baron asked Beiler about the second check. She told them that she received the money from First American in a sealed envelope, handed it to a teller at a Crestar branch bank in the same envelope, still sealed, for deposit in Beiler's account in that bank. Beiler said that, without opening the envelope and counting the money, the teller stamped the deposit slip which Beiler had filled out and returned it to her.

However, when Beiler testified, she produced only a Crestar machine-stamped deposit slip which indicated that she had deposited $100 in her account. According to Beiler, the Crestar teller said, "how much do you want? I said, $100, and I said — showed how much I had there and that's how much my pay check was."

Following her conversation with the Barons that Monday morning, Beiler went to both banks to find out what had happened. Baron testified that upon her return, Beiler told him that "things were straightened out."

The following are details of Beiler's testimony concerning her conversations with the branch managers of both banks and with the Crestar teller that Monday morning. Upon ascertaining that First American's records showed that its teller had delivered $743.50 to Beiler, Beiler went to Crestar for an explanation. The Crestar teller "told me that that was the right amount, that this was in the envelope and that was the right amount she gave me back and she remembered it." After this conversation, the managers of both banks said "we'll just drop it. I just dropped it. I mean I had done all that I know what to do."

Beiler's testimony indicated that she was the only person who had had possession of the two checks between the times of their delivery and negotiation. She denied that she had altered either check or that she had received the additional $600 from either of the checks. Beiler testified that Baron frequently drank on the job, and that he was drinking the day he wrote the second check.

The trial court found that Beiler altered both checks and that these alterations caused the tellers to pay Beiler an additional $600 for each check. After considering authorities submitted by each party, the court concluded that Beiler's changes of the numerical amounts of the checks were sufficiently material alterations to constitute the forgery of each instrument.

■ First, Beiler argues that the evidence is insufficient, as a matter of law, to convict her of forging these checks. She contends that a reasonable hypothesis is that in writing these checks, Baron had probably been drinking when he wrote the checks and may have mistakenly used the numeral seven instead of the numeral one and that neither Beiler nor the two drive-through tellers noticed the mistake when the checks were cashed.

We find no merit in this argument. Baron's positive statement that he did not write the numeral seven on either check, coupled with Beiler's inconsistent and contradicted statements, provides ample support for a finding that Beiler altered both checks and received the extra money.

Next, Beiler maintains that, assuming she did alter the numerical amounts of these checks, her acts did not constitute a forgery of those instruments. She correctly notes that common-law forgery is "the false making or *materially altering* with intent to defraud, of any writing which, if genuine, might apparently be of legal efficacy." *Fitzgerald* v. *Commonwealth*, 227 Va. 171, 173, 313 S.E.2d 394, 395 (1984) (emphasis added). She argues that the

"material alteration" referred to in those forgery prosecutions is the same material alteration referred to in the Uniform Commercial Code—Commercial Paper. "Any alteration of an instrument is material which *changes the contract* of any party thereto in any respect." Code § 8.3-407(1). Because Beiler's alteration of the numerical amounts could not affect the contract between First American and Baron for the payment of the lesser, written amounts, Beiler contends that her alterations were not material and, therefore, cannot constitute the crime of forgery.

▌ In our opinion, it makes no difference that Beiler's alterations of the checks did not change the bank's contract with Baron. Beiler's fraudulent alterations were material because they induced the tellers to pay the larger amounts shown 'on the checks. "[A] fact is material when it influences a person to enter into a contract, when it deceives him and induces him to act, or when without it the transaction would not have occurred." *Packard Norfolk* v. *Miller*, 198 Va. 557, 563, 95 S.E.2d 207, 211-12 (1956).

▌ Nor does it matter that the tellers should not have paid Beiler the larger amounts shown on the checks. "[A]n instrument is one of legal efficacy, within the rules relating to forgery, where by any possibility it may operate to the injury of another." *Hanbury* v. *Commonwealth*, 203 Va. 182, 187, 122 S.E.2d 911, 915 (1961) (quoting *Gordon* v. *Commonwealth*, 100 Va. 825, 829, 41 S.E. 746, 748 (1902)).

We conclude that the evidence was sufficient to find Beiler guilty of forging and uttering the two checks in issue. Accordingly, we will affirm the trial court's judgment.

*Affirmed.*