Present:  All the Justices

WILLIAM C. STEVENSON

v.  Record No. 990032    OPINION BY JUSTICE ELIZABETH B. LACY
                                        November 5, 1999
COMMONWEALTH OF VIRGINIA

                FROM THE COURT OF APPEALS OF VIRGINIA

     William C. Stevenson, an Associate Professor of Surgery and Director of Liver Transplantation at the University of Virginia Medical School, was indicted by an Albemarle County grand jury on one count of forgery and one count of uttering a forged writing in violation of Code § 18.2-172.  He pled not guilty and, following a two-day trial, a jury convicted Dr. Stevenson of forgery and recommended a fine of $1.00.  The jury acquitted Dr. Stevenson on the charge of uttering a forged document.  The Circuit Court of Albemarle County entered judgment on the jury verdict.  The Court of Appeals, following a rehearing en banc, affirmed the judgment of the trial court by an evenly divided vote without opinion. Stevenson v. Commonwealth, 28 Va. App. 562, 507 S.E.2d 625 (1998).

     The issue presented to us in this appeal is whether the facts of this case establish beyond a reasonable doubt that Dr. Stevenson committed forgery as charged in the indictment, that is, whether "[o]n or about February 6, 1996, in the County of Albemarle, WILLIAM C. STEVENSON did unlawfully,

feloniously and knowingly forge a cardiac stress test writing, to the prejudice of Trigon Blue Cross/Blue Shield."  The crime of forgery requires not only that a writing be forged, but that the forged writing prejudiced or could prejudice the right of another.  Terry v. Commonwealth, 87 Va. 672, 673, 13 S.E. 104, 104 (1891).

In this case, Dr. Stevenson admits that he produced a forged writing by altering a date on his patient's cardiac stress test report.  However, Dr. Stevenson argues that when he altered the stress test report, there was no possibility that the altered document did or could prejudice Trigon's rights.  Therefore, Dr. Stevenson asserts he was not guilty of the crime of forgery.  We agree.

The evidence taken in the light most favorable to the Commonwealth, the prevailing party at trial, showed the following.  In 1995, Leonard Kraditor, a patient of Dr. Stevenson, began experiencing liver failure.  Dr. Stevenson sought to have Kraditor placed on the nationwide list of patients needing organs, but was told by the University of Virginia Medical Center (Medical Center) personnel that it would not place Kraditor on the transplant list until Kraditor's medical insurance carrier, Trigon Blue Cross/Blue Shield (Trigon), pre-authorized payment for the transplant operation.

2

Dr. Stevenson was anxious to have Kraditor placed on the transplant list before the Christmas holiday. Although he submitted a letter explaining the medical necessity for the liver transplant as part of the procedure for obtaining pre-authorization from Trigon, and attempted to contact the director of medical policy at Trigon, he was unable to secure the pre-authorization before the Christmas holiday. Nevertheless, the administrator of the Medical Center agreed to place Kraditor on the transplant list without receiving pre-authorization for the transplant procedure from Trigon.

A liver became available and Dr. Stevenson successfully performed the transplant operation on January 21, 1996. The next day, January 22, 1996, unaware that the surgery had been performed, Trigon rejected the pre-authorization request because Trigon considered Kraditor a high risk for the surgery and needed the "results of his cardiac, renal and pulmonary evaluations" before pre-authorization could be issued.

By January 28, Kraditor's body was rejecting the new liver. When Dr. Stevenson sought to have Kraditor placed on the transplant list again, he was told that the Medical Center would not place Kraditor on the list again until the "pre-authorization" for the now-completed transplant surgery was received from Trigon. The only cardiac evaluation available to Dr. Stevenson was a cardiac stress test performed on

3

Kraditor in April 1994.  On January 30 or 31, Dr. Stevenson changed the date shown on the report for the administration of Kraditor's stress test from April 1994 to October 1995.  After attaching a cover note to the altered stress test report, Dr. Stevenson left the papers on his desk.  Shortly thereafter, Kraditor decided not to undergo further transplant surgery and informed Dr. Stevenson of his decision.  Kraditor died of liver failure on February 2, 1996.

On February 6, 1996, the altered stress test report was sent to Trigon.  Relying on the altered stress test report as an indication that Kraditor's cardiovascular system could survive the transplant surgery and recovery, on February 12, 1996 Trigon issued the pre-authorization for Kraditor's now-completed liver transplant.  Trigon was unaware that the surgery had been successfully completed at the time it issued this pre-authorization.

While this evidence establishes that Trigon relied on the altered stress test report in issuing its pre-authorization for Kraditor's January 21 liver transplant operation, it does not establish that this reliance and subsequent issuance of the pre-authorization prejudiced or could have prejudiced Trigon's rights.  According to Trigon officials who testified at trial, pre-authorization is a mechanism which allows the medical provider to obtain a preliminary indication of whether

4

Trigon will pay the costs associated with the medical treatment to be performed, prior to incurring the expense of performing the treatment. Pre-authorization, according to Dr. Richardson Grinnan, Trigon's Senior Vice-president and Chief Medical Officer, is a "service to physicians and subscribers to prevent after-the-fact medical necessity denials." Although some insurance plans require pre-authorization as a condition for payment of a claim, Kraditor's health insurance policy with Trigon did not. Therefore, any prejudice to Trigon in terms of liability for the transplant procedure did not include the existence or non-existence of pre-authorization by Trigon for the procedure.

More importantly, assuming that issuance of the pre-authorization could limit Trigon's ability to contest the medical necessity of a procedure after the fact, Trigon did not and could not have suffered such prejudice under the facts of this case. Dr. Grinnan testified that when procedures are not pre-approved, determinations as to payment are made on information available after the procedure. In this case, according to Dr. Grinnan, when Kraditor survived the liver transplant without cardiac complications, the altered stress test "would not have had an adverse determination on whether or not [Trigon] would have paid that bill." Dr. Grinnan and Dr. Lawrence Colley, head of Trigon's medical policy

5

department, both testified that Trigon would have approved payment for the procedure once it learned that Kraditor had survived the operation even if there had been no stress test report.

Our conclusion that potential prejudice to Trigon was not established in this case is not based simply on the fact that Trigon was liable for the cost of the procedure whether or not the pre-authorization was issued. The controlling fact in this case is that, at the time the forged writing was made, no prejudice did or could attach to Trigon as a result of the altered stress test report, because at that time the surgery had been successfully completed and Trigon acknowledged that its liability existed at that time. Accordingly, any limitation on Trigon's right to contest the medical necessity of the procedure imposed by the subsequent issuance of the pre-authorization was immaterial. Because Trigon's liability could not have been affected by the forged writing, no real or potential prejudice to Trigon could result from the forged writing. Therefore, in the absence of such prejudice to Trigon, the crime of forgery was not established. Accordingly, we will reverse the conviction and dismiss the indictment.

Reversed and dismissed.