COURT OF APPEALS OF VIRGINIA

Present: Judges Humphreys, Kelsey and Petty
Argued at Alexandria, Virginia

ANDREW NAMBUM LEE

MEMORANDUM OPINION* BY
v.        Record No. 1271-09-4                                   JUDGE D. ARTHUR KELSEY
MAY 4, 2010

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF ALEXANDRIA
Nolan B. Dawkins, Judge

Fred M. Rejali for appellant.

Kathleen B. Martin, Senior Assistant Attorney General
(William C. Mims, Attorney General, on brief), for appellee.

The trial court found Andrew Nambum Lee guilty of forgery and uttering in violation of

Code § 18.2-172. On appeal, Lee contends the evidence was insufficient to prove his guilt

beyond a reasonable doubt. We disagree and affirm.

I.

On appeal, we review the evidence in the "light most favorable" to the Commonwealth.

Commonwealth v. Hudson, 265 Va. 505, 514, 578 S.E.2d 781, 786 (2003). This principle

requires us to "discard the evidence of the accused in conflict with that of the Commonwealth,

and regard as true all the credible evidence favorable to the Commonwealth and all fair

inferences to be drawn therefrom." Parks v. Commonwealth, 221 Va. 492, 498, 270 S.E.2d 755,

759 (1980) (emphasis and citation omitted).

In addition, our examination of the record "is not limited to the evidence mentioned by a

party in trial argument or by the trial court in its ruling." Bolden v. Commonwealth, 275 Va.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

144, 147, 654 S.E.2d 584, 586 (2008). In determining whether there is evidence to sustain a conviction, an appellate court must consider "all the evidence" admitted at trial that is contained in the record. Hamilton v. Commonwealth, 279 Va. 94, 103, 688 S.E.2d 168, 173 (2010) (quoting Bolden, 275 Va. at 147, 654 S.E.2d at 586).

In June 2008, Lee worked as a letter carrier for the United States Postal Service (USPS) in Alexandria, Virginia. His job involved distributing mail outdoors while carrying a 35-pound bag containing letters and boxes. Complaining of right shoulder and left elbow pain, Lee requested light-duty work. Lee's supervisor provided him with a USPS "Medical Clearance/Non-Occupational Light Duty" form and told him his physician needed to fill out the form to verify the medical basis for Lee's request. If his doctor did so, the supervisor explained, Lee would be assigned a "light duty" position in place of his full-duty position without a reduction in pay.

Lee met with Dr. Seung Paik, an orthopedic surgeon, on June 12 and brought the blank USPS form with him. Dr. Paik examined Lee, concluded he had "tennis elbow," and advised him to avoid lifting more than 10 pounds with his right hand. Dr. Paik filled out the USPS form, noting the 10-pound lifting restriction and concluding Lee should be placed on light duty for one month. Lee gave the form to his supervisor, but by then it had become wet and illegible. Lee said the form got wet because he "sweat a lot" and he may have set a drink on it. Lee's supervisor asked him to obtain another, legible copy from his physician.

On June 16, Lee returned to Dr. Paik's office without first making an appointment. Dr. Paik met Lee who provided another blank USPS form for him to fill out. Later that day, Lee gave his supervisor a legible, completed form. The supervisor noticed the new form differed from the wet one in key respects: two types of ink were apparent, the handwriting was inconsistent, and the restrictions were more severe. The supervisor asked Lee if he had filled out any part of the form. He said he had not.

The new USPS form stated Lee should avoid lifting or carrying 0-10 pounds with his left arm and avoid lifting or carrying 10-20 pounds with his left elbow. The form then identified sixteen specific work restrictions related to Lee's medical condition including:

- Ø hours a day continuous or intermittent lifting or carrying between 0-10 pounds

- 1 hour a day continuous standing with no more than 3 hours a day intermittently standing

- 1 hour a day continuous walking with no more than 3 hours a day intermittently walking

- 1 hour a day continuous kneeling with no more than 2 hours a day intermittently kneeling

- 1 hour a day continuous bending with no more than 2 hours a day intermittently bending

- 1 hour a day continuous stooping with no more than 3 hours a day intermittently stooping

- 1 hour a day continuous twisting with no more than 2 hours a day intermittently twisting

- 1 hour a day continuous pulling / pushing with no more than 3 hours a day intermittently pulling / pushing

- 1 hour a day continuous simple grasping with no more than 3 hours a day intermittently grasping

- 1 hour a day continuous keying with no more than 3 hours a day intermittently keying

Based upon these restrictions, the USPS form authorized light duty for three months.

Suspicious of Lee's intentions, the supervisor passed the form on to the USPS Inspector General. During an internal investigation, a USPS special agent obtained a copy of the June 16 form signed by Dr. Paik and showed Dr. Paik the form Lee had presented to his supervisor. Dr. Paik identified the portions of the form he filled out and the portions (mostly those denoting additional restrictions) that he did not fill out or authorize.

The USPS special agent then confronted Lee with the discrepancies in the two forms. Lee initially denied altering the second form, stating Dr. Paik had "filled out the entire form" exactly as it was submitted by Lee to his supervisor. But after the USPS special agent told Lee they had performed a handwriting comparison, Lee confessed to altering the form and identified the specific alterations he had made. The alterations Lee owned up to corresponded with portions of the form left blank by Dr. Paik.

Lee maintained that, altered or not, the form accurately reflected the oral statements Dr. Paik made to Lee during his visit on June 16. Lee nonetheless admitted he was motivated to alter the form because he wanted the restrictions. He intended to leave the USPS "no choice but to find him light duty work" and ensure he was given work *inside* the station because he wanted to avoid the heat outside. Lee conceded what he had done was wrong and expressed regret. The interview came to a close when Lee threatened suicide and was transported to a local hospital.

At trial, Lee took the stand in his own defense. He testified Dr. Paik had only partially filled out the USPS form. When Lee discovered the omissions, he confronted Dr. Paik in his office and talked further about his limitations. From this conversation, Lee asserted, he felt justified in altering the form to match his understanding of his limitations and Dr. Paik's alleged acquiescence with these limitations.

Dr. Paik also testified at trial. He acknowledged the restrictions he wrote on the USPS form, including that Lee should avoid lifting or carrying 0-10 pounds with his left arm and avoid lifting or carrying 10-20 pounds with his left elbow. Dr. Paik denied placing many (though not all) of the specific restrictions on the USPS form submitted by Lee to his supervisor on June 16. Dr. Paik said he did not fill out the portion of the form restricting Lee to zero daily hours continuous or intermittent lifting and carrying between 0 and 10 pounds. Nor did Dr. Paik place any hourly restrictions at all on sitting, standing, walking, climbing stairs, climbing ladders,

kneeling, bending, stooping, twisting, pulling, pushing, simple grasping, or keying — all activities specifically restricted on Lee's altered USPS form.[1]  Sitting as factfinder, the trial court rejected Lee's testimony and found him guilty of forging the USPS form and thereafter uttering it to his supervisor.

## II.

### A. APPELLATE STANDARD OF REVIEW

An appellate court does not "ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt." Williams v. Commonwealth, 278 Va. 190, 193, 677 S.E.2d 280, 282 (2009) (quoting Jackson v. Virginia, 443 U.S. 307, 318-19 (1979)) (emphasis in original).[2]  "Rather, the relevant question is whether 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Id. (citation omitted and emphasis in original).  We are "not permitted to reweigh the evidence," Nusbaum v. Berlin, 273 Va. 385, 408, 641 S.E.2d 494, 507 (2007), because appellate courts have no authority "to preside *de novo* over a second trial," Haskins v. Commonwealth, 44 Va. App. 1, 11, 602 S.E.2d 402, 407 (2004).  Instead, we give factfinders

> the wide discretion to which a living record, as distinguished from
> a printed record, logically entitles them.  The living record contains
> many guideposts to the truth which are not in the printed record;
> not having seen them ourselves, we should give great weight to the
> conclusions of those who have seen and heard them.

James v. Commonwealth, 53 Va. App. 671, 677, 674 S.E.2d 571, 574 (2009) (citation omitted).

---

[1] Dr. Paik also denied authorizing the modifications.  To place someone on "light duty," Dr. Paik explained, he "would have to make [the] mark[s]" himself, on a new form if necessary.

[2] See also McMillan v. Commonwealth, 277 Va. 11, 19, 671 S.E.2d 396, 399 (2009); Jones v. Commonwealth, 277 Va. 171, 182-83, 670 S.E.2d 727, 734 (2009); Maxwell v. Commonwealth, 275 Va. 437, 442, 657 S.E.2d 499, 502 (2008).

Consequently, "we do not substitute our judgment for that of the fact finder," Hamilton, 279 Va. at 105, 688 S.E.2d at 175, "even if our opinion were to differ," Ferguson v. Commonwealth, 51 Va. App. 427, 435, 658 S.E.2d 692, 696 (2008) (*en banc*) (citation omitted).

In a bench trial, a trial judge's "major role is the determination of fact, and with experience in fulfilling that role comes expertise." Haskins, 44 Va. App. at 11, 602 S.E.2d at 407 (citation omitted). "If reasonable jurists could disagree about the probative force of the facts, we have no authority to substitute our views for those of the trial judge." Campbell v. Commonwealth, 39 Va. App. 180, 186, 571 S.E.2d 906, 909 (2002). This deferential standard "applies not only to the historical facts themselves, but the inferences from those facts as well." Clanton v. Commonwealth, 53 Va. App. 561, 566, 673 S.E.2d 904, 907 (2009) (*en banc*) (citation omitted).

## B. FORGERY & UTTERING

"Forgery is a common law crime in Virginia." Fitzgerald v. Commonwealth, 227 Va. 171, 173, 313 S.E.2d 394, 395 (1984). The common law defines forgery as "the false making or materially altering with the intent to defraud, of any writing which, if genuine, might *apparently be of legal efficacy*, or the foundation of legal liability." Id. (quoting Bullock v. Commonwealth, 205 Va. 558, 561, 138 S.E.2d 261, 263 (1964)) (emphasis added). A document has "legal efficacy, within the rules relating to forgery, where by *any possibility* it may operate to the injury of another." Beiler v. Commonwealth, 243 Va. 291, 295, 415 S.E.2d 849, 851 (1992) (emphasis added); Hanbury v. Commonwealth, 203 Va. 182, 187, 122 S.E.2d 911, 915 (1961); Gordon v. Commonwealth, 100 Va. 825, 829, 41 S.E. 746, 748 (1902).

Forgery thus applies to documents "which *might* be acted upon as being genuine," Rodriquez v. Commonwealth, 50 Va. App. 667, 671, 653 S.E.2d 296, 298 (2007) (citation omitted and emphasis in original) — because it is sufficient if the forged document "could

prejudice the right of another," Stevenson v. Commonwealth, 258 Va. 485, 487, 522 S.E.2d 368, 368 (1999), or create even the "bare possibility" of prejudice, Muhammed v. Commonwealth, 13 Va. App. 194, 199, 409 S.E.2d 818, 821 (1991) (citation omitted).

Uttering is also a common law crime in Virginia. Uttering includes any "assertion by word or action that a writing known to be forged is good and valid." Bennett v. Commonwealth, 48 Va. App. 354, 357-58, 631 S.E.2d 332, 333 (2006) (quoting Bateman v. Commonwealth, 205 Va. 595, 600, 139 S.E.2d 102, 106 (1964)). Thus,

> any assertion or declaration, by word or act, directly or indirectly, that the forged writing or endorsement is good, with such knowledge and intent, is an uttering or attempting to employ as true the said writing or endorsement; provided that such assertion or declaration was made in the prosecution of the purpose of obtaining the [object] mentioned in the said writing.

Sands v. Commonwealth, 61 Va. (20 Gratt.) 800, 823-24 (1871). "A forged instrument is uttered when it is offered to another as genuine, without regard to whether it is so accepted." Bennett, 48 Va. App. at 358, 631 S.E.2d at 333 (quoting 4 Charles E. Torcia, Wharton's Criminal Law § 496 (15th ed. 1996)).

Judged against these standards, Lee's convictions for forgery and uttering easily stand up against his sufficiency challenge. A rational factfinder could find, as the trial court presumably did,[3] that Lee deliberately falsified the USPS form for the purpose of manipulating his employer into changing the scope of his duties to include only light-duty work *inside* the USPS station. From his conversation with his supervisor and from an examination of the language on the USPS form itself, Lee understood his alterations would be (if undetected) attributed to his physician. Lee also believed the USPS would be compelled — either legally or by reason of its internal

___

[3] When "faced with a record of historical facts that supports conflicting inferences," an appellate court must presume, even if the factfinder does not expressly say so, that all such evidentiary conflicts were resolved in favor of the prevailing party. Clanton v. Commonwealth, 53 Va. App. 561, 570, 673 S.E.2d 904, 909 (2009) (quoting Harper v. Commonwealth, 49 Va. App. 517, 523, 642 S.E.2d 779, 782 (2007)).

employment policies — to limit Lee's employment tasks to those ostensibly approved by his physician.

In the lexicon of forgery law, the altered USPS form had apparent "legal efficacy," Bullock, 205 Va. at 561, 138 S.E.2d at 263, because it "could prejudice," Stevenson, 258 Va. at 487, 522 S.E.2d at 368, the USPS's employment interests. Had Lee been successful, he would have used the form to force the USPS into narrowing the scope of his employment duties and limiting the tasks that could have been otherwise assigned him — all at his full-duty pay. Lee uttered the forged form when he presented it to his supervisor as "good and valid," Bateman, 205 Va. at 600, 139 S.E.2d at 106, when he knew it was neither.

On appeal, Lee makes much over the fact that Dr. Paik's unaltered June 16 form would have also restricted the USPS's ability to assign Lee to full-duty employment. True enough. But Lee's altered version of the same form had the effect of further restricting the USPS by adding unauthorized, fictitious physical limitations. To be sure, Lee's avowed purpose was to augment his physical limitations so the USPS would have no choice but to assign him to sedentary *inside* work — a specific limitation which Dr. Paik's unaltered form would not have required.[4]

Finally, the trial court was at liberty to disbelieve Lee's claim that Dr. Paik authorized the alterations and, based upon this finding, "conclude that he was 'lying to conceal his guilt.'" Bly v. Commonwealth, 55 Va. App. 1, 12, 682 S.E.2d 556, 562 (2009) (*en banc*) (citation omitted). "This principle naturally follows from the broader observation that 'whenever a witness testifies, his or her credibility becomes an issue.'" Coleman v. Commonwealth, 52 Va. App. 19, 25-26,

---

[4] Lee also asserts Dr. Paik's testimony "was checkered and all over the place." See Appellant's Br. at 8. As the trier of fact, however, the trial court was not duty bound to accept or reject *in toto* Dr. Paik's testimony because of internal inconsistencies. The judicial "power to segregate a witness's testimony into the believable, partly believable, or wholly unbelievable is an exercise of decisional discretion intrinsic to the factfinding task and essential to its proper performance." James v. Commonwealth, 53 Va. App. 671, 679 n.2, 674 S.E.2d 571, 575 n.2 (2009) (citation omitted).

660 S.E.2d 687, 690-91 (2008) (citation omitted).  Even when not "*inherently* incredible," a defendant's exculpatory version of events need not be accepted by the factfinder.  Montgomery v. Commonwealth, 221 Va. 188, 190, 269 S.E.2d 352, 353 (1980) (emphasis in original).

III.

Because sufficient evidence supports Lee's convictions for forgery and uttering, we affirm.

Affirmed.