COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Decker, Judges Raphael and White

CODY JAMES BROUILLARD

v.       Record No. 1162-23-2

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*]
PER CURIAM
AUGUST 6, 2024

FROM THE CIRCUIT COURT OF HENRICO COUNTY
John Marshall, Judge

(Stephen A. Mutnick, on brief), for appellant.

(Jason S. Miyares, Attorney General; Angelique Rogers, Assistant
Attorney General, on brief), for appellee.

Appealing his conviction under Code § 18.2-172 for forging a check, Cody James

Brouillard argues that the Commonwealth failed to prove that he forged the check or intended to

do so. Finding the evidence sufficient to prove Brouillard's guilt beyond a reasonable doubt, we

affirm his conviction. We dispense with oral argument because "the appeal is wholly without

merit." Code § 17.1-403(ii)(a); Rule 5A:27(a).

BACKGROUND

We review the evidence "in the 'light most favorable' to the Commonwealth, the

prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022)

(quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). Doing so requires that we "discard"

the defendant's evidence when it conflicts with the Commonwealth's evidence, "regard as true

all the credible evidence favorable to the Commonwealth," and read "all fair inferences" in the

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

Commonwealth's favor. *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

In January 2022, Neil Shelor hired Brouillard to repair his home, but the work was never performed. Over the course of his dealings with Brouillard, Shelor wrote two checks to Brouillard's company, A-1 Solutions. The first was for $23,000. A week or two later, Brouillard said he needed "another draw." So on February 24, 2022, Shelor gave Brouillard a second check payable to A-1 Solutions, this time in the amount of $6,000. The second check was dated February 24, 2022, and stamped with the number "2832" in Shelor 's check register. Brouillard cashed that check the same day and told Shelor that he had done so. Shelor confirmed with his bank that the check had been cashed. This was the only check for $6,000 that Shelor had ever given to Brouillard.

On Friday, March 11, Brouillard went to a Wells Fargo bank to deposit another $6,000 check. The bank's system was down, so Brouillard tried to mobile-deposit the check instead.

On Saturday, March 12, Wells Fargo emailed Brouillard that it was closing his account "because of one or more checks deposited to or cashed against [Brouillard's] account [were] suspected to be altered." Two days later, Brouillard returned to the bank and asked to speak with a representative. Brouillard spoke first to the branch manager. He said he had attempted to cash his check on Friday, but the system was down.[1] And when he tried to make a mobile deposit, his account was blocked.

---

[1] The branch manager did not know if Brouillard had attempted to make a mobile deposit on Friday, but she testified that he would have retained possession of the check if he had.

Brouillard then spoke with a banker, who called Wells Fargo's "banker support."[2] When Brouillard showed the banker the February 27 check, the banker noticed two alterations. The date had been changed from "2-24-22" to "2-27-22," and the check number had been changed from "2832" to "2882." When asked about the check, Brouillard volunteered that one of his associates might have crumpled or smeared it. But there were no smears on the check, and the check was not crumpled; it was just folded in half. The only defects were the alterations. The banker called for the branch manager and showed her the altered check.[3]

The banker determined that Brouillard's account had been blocked because "there was another check that had been negotiated that was pretty much the exact same check." After seeing a photograph of the February 24 check, the banker called Shelor. Shelor looked at his account and confirmed that the February 24 check had been negotiated. Shelor also confirmed that he had not written a second check for $6,000.[4]

A grand jury indicted Brouillard under Code § 18.2-172 for forging a check with the intent to defraud or prejudice another's rights. At the bench trial that followed, Shelor and the bank employees testified to the facts described above, and copies of the February 24 and February 27 checks were introduced into evidence as Commonwealth Exhibits 1 and 2.

Brouillard testified in his own defense that he went to Wells Fargo on Friday, March 11, to withdraw money—not to make a deposit—but he couldn't do so because the system was

---

[2] "Banker support" is the line that bankers contact when they need to "see what is going on with [a] customer's account." The inquiry "can move into the fraud department," depending on the particular issue.

[3] The banker wrote on the top of the check: "Check presented to us by the customer today."

[4] Brouillard called Shelor later that day. Brouillard said that the bank had called him to request that he "bring in a check that he had cashed much earlier." Brouillard said that he had "found [the check] crumpled up in his truck glove box or something" and that when he brought it to the bank, "the bank said it was fraudulent."

down. Brouillard insisted that the bank teller with whom he spoke on Friday was lying when she said that Brouillard wanted to make a deposit that day. On Saturday, he called the Wells Fargo fraud department after receiving the email that his account was being closed. The department told him to go to the bank on Monday. Brouillard denied attempting to negotiate the altered check. And despite testifying that he deposited the first check on February 24, Brouillard said that he was able to retrieve the check from his trash on March 14. So he brought that check to the bank to "salvage" his account to keep it "open."[5]

The trial court denied Brouillard's motion to strike and found him guilty of forgery. The court sentenced Brouillard to five years' incarceration with two years suspended. Brouillard noted a timely appeal.

ANALYSIS

Brouillard argues that the Commonwealth failed to prove that he forged the check or had the requisite intent to defraud. "When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "[T]he relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)).

Code § 18.2-172 provides that "[i]f any person forge[s] any writing . . . to the prejudice of another's right, or utter[s], or attempt[s] to employ as true, such forged writing, knowing it to be forged, he shall be guilty of a Class 5 felony." "The General Assembly codified the English

_____

[5] Brouillard testified that the Wells Fargo account was his business account for A-1 Solutions. He said that he deposited the February 24 check in his *personal* bank account with Truist Bank through mobile deposit. He thus kept the check after the deposit.

- 4 -

common law of forgery when it enacted Code § 18.2-172." *Beshah v. Commonwealth*, 60 Va. App. 161, 169 (2012). "[T]he [common law] crime of 'forgery is defined as "the false making or materially altering with intent to defraud, of any writing which, if genuine, might apparently be of legal efficacy, or the foundation of legal liability."'" *Id.* (quoting *Fitzgerald v. Commonwealth*, 227 Va. 171, 173 (1984)). Intent to defraud "may, and often must, be inferred from the facts and circumstances in a particular case." *Id.* at 170 (quoting *Ridley v. Commonwealth*, 219 Va. 834, 836 (1979)). "Forgery of a check may be established by proving a fraudulent alteration or addition of words or numbers to the incomplete instrument." *Dillard v. Commonwealth*, 32 Va. App. 515, 518 (2000); *see Beiler v. Commonwealth*, 243 Va. 291, 294-95 (1992) (holding that the defendant's altering a "1" to a "7" on a check constitutes forgery).

The evidence here more than sufficed to show that Brouillard intentionally forged the February 27 check. On February 24, Brouillard cashed the only $6,000 check that Shelor ever gave him. But then a couple weeks later, Brouillard tried to deposit a February 27 check from Shelor, also in the amount of $6,000. The handwriting and printing on the two checks were identical except for the date and the check number. Here are the images of the two checks:



The "7" in the "2-27-22" date on the second check appears to be an altered version of the "4" in the "2-24-22" check. The check number in the top-right corner of the second check read "2882," suspiciously close to the "2832" in the first check. It would have been easy to alter the "3" in "2832" to look like an "8." The "2832" check number in the bottom line of the second check had *not* been altered to match the check number in the top-right corner. And Shelor testified that he did not write the February 27 check and that his checkbook numbers did not go that high. The trial court thus had ample basis to conclude that Brouillard "changed the date. He's changed the account number."

If that were not enough, "possession of a forged check by an accused, which he claims as a payee, is prima facie evidence that he either forged the instrument or procured it to be forged." *Oliver v. Commonwealth*, 35 Va. App. 286, 295 (2001) (quoting *Fitzgerald*, 227 Va. at 174). And Brouillard *still* had the forged check in his possession when he returned to Wells Fargo to unfreeze his account.

To be sure, Brouillard denied trying to negotiate or deposit the February 27 check. But the trier of fact in this situation is "entitled to disbelieve the self-serving testimony of the accused and to conclude that the accused is lying to conceal his guilt." *Speller v. Commonwealth*, 69 Va. App. 378, 388 (2018). The trial judge here disbelieved Brouillard's "incredible version" of events—especially Brouillard's claim that he found the check in the trash and that the two bank employees were lying about what happened.[6]

CONCLUSION

In sum, the evidence sufficed to prove beyond a reasonable doubt that Brouillard intentionally forged the February 27 check.

*Affirmed.*

---

[6] We decline to consider Brouillard's argument that there was a fatal variance between the indictment and the offense proved at trial. Brouillard's only assignment of error challenges the sufficiency of the evidence. He does not assign error to any such variance. "Only assignments of error listed in the brief will be noticed by this Court." Rule 5A:20(c)(1).